M'Kean, Chief Justice:
—The question arising on the case stated for our opinion, is, whether a seme covert, seized of a real estate in fee, can, in consequence of a power contained in articles, executed between the husband and her before their marriage (the legal estate not having been conveyed to trustees) give away such estate by will, or any instrument in nature of a will, during the coverture?
The articles of the 29th of June, 1774, are therein called a deed tripartite, and the name of James Wallace is introdued into them as a party, along with Margaret Irwin and Matthew Henderson; and they are executed by all three; but no estate is thereby conveyed to James Wallace, as a trustee, or otherwise. Margaret Henderson, during her marriage with Matthew Henderson, makes a disposition by an instrument, in nature of a will, dated January 29th 1790, of all her estate real and personal.
' It is very clear, that a feme covert, by virtue of an agreement between her and her huiband, before marriage, may dif-pofe of .her perfonal eftate by will, or teftament 5 becaufe it is to take effeft during the life of the huiband ; for, if he furviv-ed her, he would be intitléd to the \yhole, and, therefore,.-he alone could be affe&ed' by it. 2 - Fezey. 191. Peacock and Monk.
It is also clear, that a married woman cannot devise her real estate. By the statute of the 34 and 35, Hen. 8 sec. 14. it is expressly enacted, "that wills made of any manors, lands, tenements, or other hereditaments, by any woman covert, shall not be taken, to be good or effectual in law.”
It is further agreed, that if the legal estate in the lands had been vested by the deed, or articles, in James Wallace, the appointment by Margaret Henderson, would be valid and good in equity: For, then she would have had only an equitable interest; *202 a confidence would have been reposed in the trustee, that he would make such estates as she should direct; and her will would have amounted to a direction, which bound his conscience, and which a Court of Chancery would enforce. 2 Vezey. 192. 6 Bro. Par. Ca. 156. Powell Contr. 67, &c.
But in this case, Margaret Irwin, or Henderson, was the donor, and also the donee of the power; and it is contended, that the could not execute it during her coverture, because the fee still remained in herself, mid she was restrained by the statute of Hen. 8. from making a will; and by the maxims and rules of the law file is disabled, as having no will of her own.
The instrument of 1790, executed by Margaret Henderson, being then covert, is not strictly a will, but distinct from it, though in nature of a will. It takes its effect out of the articles or deed of 1774, which created the power to make such an instrument, and was made in execution of such power. She takes notice in the preamble of it, that, she was a married woman, and that, as to what she was legally intitled to dispose of, her will was as therein mentioned. It is usually called an appointment. A feme covert can execute an appointment over her own estate. Powell on Powers 34. 3 Atk. 712. The reason or ground of a wife’s being disabled to make a will, is, from her being under the power of the husband, not from want of judgment, as in the case of an infant, or idiot.
Matthew Henderson and his wife, before their marriage, agreed that her real estate should remain her properly, and might be disposed of by Will and testament, in writing, by her, as she should think fit, as absolutely as if the marriage had never been solemnized. The intention of the parties is plain, and admits of no doubt. She has accordingly disposed of it by an instrument, in nature of a will and testament, in execution of the power, and by the express consent of the husband, not to him, or his relations, but amongst her own nearest of kin. No fraud, force, flattery, or improper use of the power he had over her, as a husband, has been exerted, nor is it alledged. This will bar him from any title to her estate, and why should it not bar the heir at law, in equity and reason? Here was a fair and lawful agreement, between them, founded on a valuable and meritorious consideration. Mrs. Henderson, with her husband, could during the coverture have given away her real estate by fine, or deed (if she had been secretly examined, agreeably to the act of Assembly of Pennsylvania) conformably to their agreement; and if he had refused to join with, her, a Court of Equity (if such a Court had existed here) would, on her application, have compelled him to carry their agreement into execution. It is a lamentable truth, that there is no Court cloathed with Chancery powers, in Pennsylvania; but is of our law, and it has been, fre *203 uently determined in the Supreme Court, that the Judges will, to effectuate the intention of the parties, consider that as executed, which ought to have been done. This is also a rule in the Court of Chancery, in England. Why may not her articles of agreement, or deed, of 1774, be considered as a covenant, to stand seized of her real, estate for the uses therein specially, mentioned, and also to the use of her will, or appointment? Marriage, which tends to join the blood, is One of the considerations. held sufficient to validate such a conveyance. Why should the not have a right in Equity, of disposing of her lands as incident to her ownership; for, she is to be taken, as to the execution of this power, to be a feme sole? If the intention of the parties cannot take place by this deed and appointment, in the common way of their operation, they may be considered good in some other way: The substance, and not the form, ought principally to be regarded. Why may not this case be considered, under all circumstances, of equal operation as a deed executed by the husband and wife, in her life time, to the use of the persons named in the appointment? The Court of Chancery will supply forms, where there is a meritorious consideration; it has gone as great lengths as is desired in the present case; and I am glad to find the last cited cafe determined thee be in point, "that there is no difference between a legal and equitable interest.” Ambler 565. Rippen v. Hardin, or Hardin, by Ld. Chancellor Camden, in 1769. The spirit othe case of Wright v. Ld. Cadogan, et al. 6 Brown. Par. Ca. 156. also implies this doctrine
From all the circumstances of this case, taken together, I am of opinion, that the appointment of Margaret Henderson, passes this estate in Equity, and that judgment be given for the defendant.