### Lessee of ROBERT STEWARD against WILLIAM RICHARDSON

One who is a principal in a contract shall not be a witness to establish it. But where it appears. that he acted as an agent, his testimony shall be received.

Where one has sold the same lands to different persons, his expressions before the second sale are evidence against the second vendee; aliter of his declarations of what passed between him and such second vendee.

Every concealment will not avoid a contract, where the party ought to know the particular fact.

EJECTMENT for 481 acres of land, in Franklin township.
It was admitted, that Richard Neave, sen. and Richard Neave, jun. were seized of the lands in question.

The plaintiff made title under them, by a regular conveyance made 31s August 1793, in consideration of 481*l.*

The defendant claimed under a receipt from them to his son John Richardson, dated 19th August 1793, (twelve days previous to the plaintiff's deed,) for 18*l* 15*s.* on account of the first payment of a tract of land on Little Juniata, between Sandham's claim and land occupied by widow Ramsay, containing 393¼ acres, for which they agreed to make a good title, on Sandham's claim being settled. But if out of their power to make a title, then they promised to repay him the 18*l.* 15*s.* on demand. The Neaves' also wrote a letter to the defendant, dated 17th August 1793, wherein they impowered him to retain possession of the tract of 393¼ acres, adjoining Mathias Sandham on the south west, and other lands belonging to them on the north west, and to prevent waste committed by Robert Steward (the plaintiff,) and acknowledged the receipt of 18*l.* 15*s.* on account thereof, by his son John.

The fact in contest was, whether the Neaves contracted to sell the lands in question to the defendant, or another tract containing 393¼ acres, adjoining thereto. Two of the discriptions in the receipt, viz. Sandham's claim and Ramsay's land, exactly corresponded with the tract for which the ejectment was brought, but the 393¼ acres agreed with the quantity contained in the adjoining tract. Both plaintiff and defendant had, previous to their purchase, a divided possession of the lands in controversy; and the defendant had paid the taxes of them, before he contracted, for the preceding year.

It was contended, that the defendant had been guilty of misrepresentation and deception on the Neaves, who were imprisoned for debt in the gaol of the city of Philadelphia, at the time of writing the etter and giving the receipt.

John Richardson, to whom the receipt was given, was offered as a witness for the defendant, but was excepted to, on the ground of his being a principal in the contract, and the engagement for a good title being made to him.

*Pro curiam.* Independent of Neave's letter, he perhaps could not be admitted. But taking both papers together, it appears, that he was considered merely as an agent of his father, and that the contract was made with him in that capacity; and therefore he is a competent witness. The jury will judge of his credibility.

On the examination of one Thomas Donnelly, as a witness for the defendant, it was urged, that he should give no testimony of what had passed between the Neaves' and him, when the lessor of the plaintiff was not present.

*Per curiam.* Any expressions of the Neaves before their sale to the lessor of the plaintiff, is evidence against them, and all subsequent claimants under them, because they evince the acts of their mind and what particular lands they contemplated selling. But evidence of their declarations of what passed between them and Steward, cannot be received to establish facts to operate against the plaintiff.

On the examination of John Cannon, Esq. a witness for the plaintiff he was asked, what was the usage of the Neaves as to giving the first offers of their lands for sale, to the actual settlers on them? and what had passed between the Neaves and him, subsequent to both sales, and relative thereto? These questions were objected to.

And *per curiam.* The case is widely different between persons settling on vacant lands of the proprietaries formerly, and lands the titles whereof are vested in individuals. In the former instance, we know it to have been the uniform practice of the land office, to give the preference to actual improvers; but no such system has prevailed as to private landed property, nor will a trespass on such lands give a shadow of claim. Yet if instructions could be proved from the principles holding large property to their agents, and these instructions generally made known, that settlers should have the pre-emption of such lands, it would have considerable weight.

It is clear law, that no vendor can, by subsequent declarations, invalidate or impeach his own act; and therefore any expressions of Messrs. Neaves derogating from their receipt or deed, cannot be given in evidence. But the witness is at full liberty to prove any independent facts, or the words of either plaintiff or defendant tending to show a *suppressio veri, aut allegatio falsi* on either side, which would warrant the interposition of a court of equity, or prevent a specific execution of the agreement. Yet every concealment will not invalidate a contract. Where a man ought to know a particular fact, the other party is under no obligation to give him information thereof. 2 Bro. Cha. Rep. 420. 3 Burr. 1910.

The plaintiff suffered a nonsuit.

Messrs. Hamilton and Woods, *pro quer.*

Messrs. Duncan, C. Smith, and Walker, *pro def.*