*Saturday,*
*March 22d.*

WOODS *against* INGERSOLL and DALLAS.

It is not essential to the validity of a survey of a body of lands, that the lines of each tract should be marked on the ground. It is sufficient if the surveyor has marked lines enough to identify the particular tracts; but unless he marks all the lines, he is not entitled to the full compensation given by law.

THIS action was brought by the deputy surveyor of *Bed-ford* county, to recover from the defendants the fees due for surveying one hundred, and fifteen tracts of land of four hundred acres each, at the rate of 9 dollars 33 cents the tract; which is the full legal charge, deducting the fee for plot and return, which the plaintiff, in consequence of the defendants' refusal to pay, had never made. It was proved upon the trial, that the plaintiff or his assistant had gone upon the lands and had laid the warrants, some of which were leading warrants and the rest adjoining, according to the description of township and county therein; though in some instances the lands necessarily ran into another township. The survey was made as the surveys of company lands are usually made, by running the exterior lines of the whole body; but the *cross lines of the particular tracts were not run.* In fact, the defendants had been grossly defrauded by a person, who had led them to locate by their warrants an immense tract of mountain, on which it was impossible to run certain of the division lines; but the plaintiff was not implicated in this deception. In the ninth section of the same law which fixes the surveyors' fees, the mode of making the survey is directed as follows: " Every survey hereafter to " be returned into the land office of this state, upon any warrant " which shall be issued after the passing of this act, shall be " made by actual going upon and measuring of the land, and " *marking the lines to be returned upon such warrant*, after the " warrant authorizing such survey shall come to the hands of " the deputy surveyor, to whom the same shall be directed; " and every survey made theretofore, shall be accounted clan- " destine, and shall be void and of no effect whatever." 2 *St. Laws* 316. *April* 8th 1785. The warrants of the defendants were issued under the act of 3d *April* 1792, and came within the provisions of the above section. The cause was tried before *Yeates* and *Brackenridge* Justices, in *December* 1805. The declaration contained three counts; the first for work and labour done and materials furnished at the defendants' request; the second upon a *quantum meruit;* the third upon an *insimul com-putassent;* and the jury found a verdict generally for the plaintiff, for his whole demand without interest.

1806.

WOODS
v.
INGER-
SOLL.

A motion was made by the defendants for a new trial; which now came on to be argued by *Dallas* and *Ingersoll* for the defendants, and by *Morgan* and *Rawle* for the plaintiff.

The defendants' counsel objected to the verdict upon two grounds: First, That the plaintiff was entitled to nothing, because the survey was not made in conformity with the act of Assembly, and therefore void. Secondly, That at all events, the whole duty enjoined by that act had not been performed, and therefore entire fees could not be due.

This survey consisted in marking certain of the external trees, which could not possibly constitute more than one line of a large proportion of the tracts. The object of the law was to guard against the confusion which results from such a survey, by requiring each tract to be designated by its own peculiar limits; whereas in this survey all the interior or central tracts are without line or corner, and can be traced only from the leading warrant. It is such a survey as the law declares to be of no effect; a patent cannot be obtained upon it; and the surveyor can be entitled to no compensation for services which are not in conformity with the law.

At all events, the jury have given too much; for the entire fees are due only for the entire duty. Now whatever may be the effect of omitting to mark the cross lines of the whole body, that is, the lines of each tract, most clearly the law directs it; it is a part of the surveyor's duty; his fee is regulated with reference to it; and if he fails to do it, his compensation must be diminished accordingly.

It was answered by the counsel for the plaintiff, that the law of 1785 embraced, in the section referred to, two distinct objects; the one the *mode* of making a survey, and the other the *time* of making it. With respect to the first, it is merely directory to the deputy surveyors, and no penalty is provided for the neglect of the direction; but with respect to the latter, which was a source of fraud upon the warrant holder, the law is decisive in the penalty it affixes to disobedience, and declares that every survey made before the warrant comes to the hands of the deputy surveyor shall be accounted clandestine and *void*. With this latter clause our case has no connexion. If we have not complied with the former, we have still done enough. The

survey was proved to have been made in the usual manner; patents have been invariably granted upon such surveys, and to disturb them would be to shake innumerable titles in *Pennsylvania*. Sufficient has been done to indicate any one of the one hundred and fifteen tracts, both as to quantity and position, with perfect clearness, and this is the sole use of a survey.

If we are entitled to any thing, we are entitled to the sum found. Our claim is, in fact, for a *quantum meruit*, of which the jury are the proper judges; and they have acted with great liberality to the defendants, in allowing no interest upon a debt that has been due and unsatisfied for many years.

Tilghman C. J. This is an action brought by the plaintiff against the defendants for his services as a deputy surveyor in surveying 115 tracts of 400 acres each. The plaintiff's charge was 9 dollars 33 cents for each tract, which is the full legal charge; that is, ten dollars a tract, deducting five shillings, the fee for the plot and return, because the surveys were not returned by plaintiff. He held back the return until his fees should be paid him.

The jury found for the plaintiff 1073 dolls. 33 cents, being the full amount of his claim without interest.

From the report of the judges who sat on the trial of the cause, I take for granted that the evidence warranted the conclusion that although the external lines of the whole body of land were run, so as to enable the plaintiff to ascertain not only the whole quantity but also the quantity of each particular tract, yet the cross lines dividing the several tracts from each other, were not run.

By the act of Assembly fixing the fees of the deputy surveyor, it is enacted as follows in the 9th section: " Every survey " hereafter to be returned into the land office of this state upon " any warrant which shall be issued after the passing of this " act, shall be made by *actual going upon and measuring of the* " *land, and marking the lines to be returned* on such warrant, " *after the warrant authorizing such survey shall come to the* " *hands of the deputy surveyor* to whom the same shall be di- " rected; and every survey made *theretofore* shall be accounted " *clandestine*, and shall be *void and of no effect* whatsoever." 8th *April* 1785. 2 *St. Laws*. 316.

The mode of making the survey is *directed* in the former part of this section, that is, by actual going upon and measuring the land and marking the lines; the latter part of the section goes further, and declares that unless the survey is made *after* the warrant comes to the hands of the deputy surveyor, it shall be absolutely *void*. So that although the *directing* part of the section is not strictly complied with, still the survey may be sufficient to entitle the warrantee to a patent, provided the surveyor has been upon the ground and run lines sufficient to identify the tract, and ascertain the quantity contained in it. I mention this, because it has been insinuated, although the point was not formally made, that perhaps the surveys made by the plaintiff were void, inasmuch as all the lines of each tract were not run and marked. I understand that the construction which I have put upon the 9th section of the act of Assembly in question, has always been, as it still is, held by all the Judges of this Court: and it is of consequence that there should be no misunderstanding on the point, as the titles of a vast number of persons, who have taken up lands from the commonwealth and paid for them, would be shaken by a contrary opinion.

But although the surveys made by the plaintiff for the defendants may not be void, yet as he has failed in his duty plainly prescribed by law, he cannot be entitled to the whole of those fees which are established by law, for services which are but in part performed. Although the defendants may receive their patents on the return of the surveys, they may be under the necessity afterwards of running and marking those lines, which ought to have been run and marked by the plaintiff; and this will occasion an additional expense. It is true the jury gave the plaintiff no interest, but that is not a sufficient reason why there should not be a new trial; because, if the delay of payment has been occasioned by his demanding more than he was entitled to, he would not be entitled to interest for what might be really due to him.

I am of opinion therefore that the jury did wrong in giving the plaintiff his whole claim. The justice of the case requires a new trial.

YEATES J. I much regret that I cannot concur in the opinion which has been delivered, and peculiarly so upon the ground that I am abundantly satisfied our respectable brothers have

been grossly defrauded in this speculation by the person who furnished them the locations. If the plaintiff has not participa ted therein, the sins of Dr. *James Hamilton* cannot be visited upon him.

It was proved on the trial that the warrants were put into the plaintiff's hands to be executed at the instance of the defendants, and that he was urged by one of them to use *dispatch* on *their* land warrants. *Mat. Taylor* swore that he surveyed forty six of the tracts by actually going on the land and surveying the tracts as is usual in the case of Company lands, and that there were no other lands vacant which suited the description of the warrants; but he did not answer the question as to running and marking the intermediate lines. From the posts expressed in the returns of survey, it might fairly be inferred that many of the cross lines were not actually run; but in how many instances this omission obtained, was not ascertained.

The Judges who tried the cause were divided in opinion, whether the plaintiff's not running and marking the intermediate lines of each survey was not a full bar to his recovery of any money whatever in this suit. I was then of opinion, and have seen no reason to alter it, that it would be more just to say that there might be a deduction from the surveyor's bill, than wholly to defeat his claim to remuneration. The want of returning the surveys can be no obstacle, because, under the 8th section of the act of 8th *April* 1785, the deputy surveyor has a lien on the survey for the payment of his fees.

The difficulty arises on the 9th section of that act. It is plain that the surveys declared to be clandestine and void are those which shall be made before the warrants shall be received by the deputy surveyor. I concur with the plaintiff's counsel, who asserted that the preceding parts of the section are merely *directory.* A different construction would invalidate many surveys of large bodies of lands, wherein the exterior lines have been run and marked for companies or an individual, and the division lines have not been run on the ground. I again repeat that the decision on this point in *Centre* county has been much mistaken. I go further, and assert that surveys of a similar nature have more than once received our sanction upon the circuit. It is well known that the closing line of a survey is seldom or never run on the ground, being susceptible of mathematical calculation.

It is not my idea that a surveyor is entitled to his full fees unless he shall have performed the duties enjoined on him by law. He should faithfully perform his official duty; and though the usage has been for many deputies to run and mark only the outside lines of a large tract owned by several persons in partnership, he is obliged to run and mark the subdivision lines, when required so to do. If he should find himself under a physical impossibility to do the work, he should represent the same to the proprietors; the law compels no man to do impossibilities, and such impossibility certainly exists in the execution of some of the present surveys.

But here I apprehend the jury have made what they deemed a proper deduction from the sum demanded. The plaintiff's counsel claimed interest on the full services from the time the business of the surveys was concluded, making 115 surveys at 3*l.* 10*s.* each, (allowing the fees on the return of each survey) which amounts to 1073 dolls. 33 cents. The returns of survey were ready in *October* 1795, which until the 9th *December* 1805, the time of trial, forms a period of ten years and two months; and the jury by not allowing the plaintiff that interest, have in fact deducted from him the sum of six hundred dollars and upwards. From the evidence adduced on the trial he must be considered as the agent of the defendants, and is now out of pocket the sums he has advanced for provisions, chain carriers, &c. In this view of matters my sense of duty compels me to dissent from the opinion delivered by the majority of the court, and I trust what I have said will be imputed solely to that impression.

Smith J. gave no opinion, as he was not present at the argument.

Brackenridge J. concurred with the Chief Justice that there should be a new trial; but said at the same time that he could form no idea of a *quantum meruit* for half services.

New trial granted.