## Grayson *against* Bannon.

A deposition written by the agent of the party or his wife, not in the presence of the justice, and afterwards sworn to, cannot be read in evidence.

An agent is a competent witness to prove the existence, loss, and contents of a written power to himself; and there is no distinction between such testimony when offered to prove an authority respecting land and other cases.

ERROR to the common pleas of *Beaver* county.

Mary Grayson against John Bannon and Jeremiah Bannon. This was an action of ejectment for two hundred acres of land; in which each party claimed under a treasurer's sale for taxes. The sale to the plaintiff was for the taxes of 1815, 1816, 1817, and 1818, and the deed was dated the 30th of August 1820. The sale to the defendants was for the taxes of 1819 and 1820, and the deed to them dated the 27th of August 1822, in which the land was described as "Lot No. 5, in North Beaver township of two hundred acres."

The plaintiff offered in evidence the deposition of William Craighead, which, it appeared, had been written by John Moore, the agent of the plaintiff, or his wife, and afterwards sworn to before the justice. The defendants objected to the reading of the deposition, and it was rejected by the court. The plaintiff excepted.

The plaintiff's counsel then offered to prove by John Moore that he in the year 1826, had a written power of attorney, executed by Mary Grayson, his sister-in-law, authorising him to make a compromise in relation to the land in dispute; that in pursuance of the power of attorney he entered into contract under seal, with John Bannon, in the presence and with the consent of Jeremiah Bannon, the person to whom the treasurer's deed had been made.

The defendants' counsel objected to the testimony on the ground that the attorney in fact is incompetent to prove the existence of a written power to himself. The court sustained the objection, and thereupon the counsel excepted to the opinion of the court.

John Moore further testified, on the part of the plaintiff, that, in the year 1823, Arthur Chenowith was in Carlisle; and in his, witness's, presence told Mary Grayson that her tract of land was sold for taxes; heard her request Chenowith, when he returned, to make such arrangement with the purchaser as would secure the land. In the year 1826 witness called at the house of John Bannon, who then resided on the land, told him his, witness's, business, and requested him to meet witness at Mr Chenowith's in Newcastle, who had then been agent. Bannon said he would do so, and accordingly met him (witness) at Chenowith's, agreeably to appointment.

[Grayson v. Bannon.]

Mr Chenowith said to Bannon, " Here is Mr Moore, the agent of Miss Grayson, to fulfil the agreement I made with you;" stated the agreement to be that he (Bannon) was to go on and improve the property for Mary Grayson, and that she was to pay for the improvements, and, if they could not agree, then it was to be left to three disinterested men to say what the improvements were worth, and he, John Bannon, was to live on the land as her tenant.　John Bannon did not object to the statement, and Jeremiah Bannon was present and heard the conversation.

The plaintiff's counsel offered to prove, in addition to the testimony given by the witness Moore, that, at the time spoken of by him, the value of improvements made by Bannon was ascertained and agreed upon by Bannon and Chenowith, in the presence of the witness; that the said value was one hundred dollars, which the witness, acting as agent of the plaintiff, paid to Bannon in the presence of his brother Jeremiah and Mr Chenowith; that this was done before the written contract was executed which contained the terms of this agreement, and the money was paid after it was reduced to writing, but immediately before its execution.　This testimony, so offered by the plaintiff's counsel, was objected to by the defendants' counsel on the ground that, by the testimony, there appeared to be a written agreement, which was better evidence. The objection was sustained by the court, and the evidence rejected, to which opinion of the court the plaintiff's counsel excepted, and requested the said court to put their seals to these exceptions.　In connection with the above and foregoing evidence, the plaintiff's counsel now offered the written contract, dated the 15th day of April 1826, under the hands and seals of the defendants, John Bannon and John Moore, the agent of Mary Grayson, as the con tract of John Bannon with John Moore for Mary Grayson; and offered to prove the execution thereof.　To this evidence the defendants' counsel objected, which objection was sustained by the court and the evidence rejected, to which opinion of the court the plaintiff's counsel also excepted, and requested the court to put their seals to the same.

The counsel for plaintiff requested the court to charge the jury that the treasurer's deed, which the defendants claim, is void, by reason of the vagueness in the description of the land sold for taxes; and that the deed aforesaid does not identify the land in controversy. In answer to which point, made by the plaintiff's counsel, the court charged the jury as follows: " The identity of the land described in the deed is generally a question of fact for the jury.　There may be cases in which the description is so vague and so uncertain that it would be the duty of the court to direct the jury, as a question of law, that the description was so vague and so uncertain that it did not identify the land in controversy.　In this case the deed is for lot No. 5 in North Beaver township, containing 200 acres, assessed with taxes, and sold in the name of Grayson's heirs.　The

testimony given by the plaintiff, and the declaration of Arthur Che-
nowith, the agent of the plaintiff, connected with the description of
the land in the deed, is, if believed by the jury sufficient to identify
the tract to be the same, claimed by the plaintiff." To this opinion
delivered by the court to the jury the plaintiff's counsel also ex-
cepted.

The errors assigned were to the opinion of the court, as stated in
each of the bills of exception, and in their charge to the jury.

*Dunlap* and *Forward*, for plaintiff in error, as to the admissibi-
lity of an agent to prove his own power, cited 1 *Yeates* 23, 38, 200,
502; 2 *Dall* 246, 300; 10 *Serg. & Rawle* 252; 2 *Whart.* 340; 7
*Watts* 524; 2 *Johns. Cas.* 488; 11 *Pick.* 400; 3 *Watts* 129.

*Agnew, contra,* on the same point, cited 2 *Dall.* 442; 2 *Yeates*
89; 12 *Mass. Rep.* 237.

The opinion of the Court was delivered by

SERGEANT, J.—The material question in this case is, whether
Moore was admissible as a witness for the plaintiff, to prove the
existence of a written power of attorney executed by the plaintiff,
authorising him to make a compromise in relation to the land in
dispute; that in pursuance of the power he entered into a contract
under seal with John Bannon, in the presence and with the consent
of Jeremiah Bannon, the person to whom a treasurer's deed had
been made. The defendant objected to this testimony, on the
ground that the attorney in fact is incompetent to prove the exist-
ence of a written power to himself, and the court below rejected
the testimony. It is understood also, that the facts of the loss of
the power of attorney, and of diligent search for it, were embraced
in the offer of the evidence, though not specifically stated in the
record.

It must be confessed that, in our own reports, there is an extra-
ordinary conflict among the early authorities on this point, which
seem to have left it in an unsettled state. In Miller *v.* Hayman,
1 *Yeates* 23, it is said by the court, that nothing is more frequent
than persons buying lands, ships, and other property, through the
medium of their friends. They, in many instances, do not wish to
appear openly as bidders at public outcry. It would materially
affect all such transactions, if the power or authority to purchase
could not be proved by the agent or factor bidding. But the rule
now laid down is not intended as a general one. In this case J.
Hubly, Esq., was sworn as a witness for the plaintiff, who, as
sheriff, sued the defendant for the price of a house and four lots of
ground purchased by him at public sale. And the case of Cun-
ningham *v.* Galt, which was supposed to have decided the contrary,
appeared on examination to have turned on another point; namely,
that the witness was interested to prove he was appointed agent to

receive moneys due to him by the Presbyterian congregation of Pequea. The case of Stewart *v.* Richardson, 2 *Yeates* 89, is to the same effect with that of Miller *v.* Hayman.

In Meredith *v.* Macoss, 1 *Yeates* 200, the suit was by a lessee from the owner against the defendant, who claimed, under a previous agreement, to lease to him for several years, made by the sister of the owner. The defendant offered the sister to prove her authority to rent the land, but she was rejected. The court say that her power must be proved by other testimony. If there was a written power of attorney, it ought to be produced to be judged of. If it did not exist, but is burnt, lost, or mislaid, she may be examined to that point; but the contents must be proved by other witnesses, or a copy. Here it is admitted that the agent is a witness to prove the existence and loss of the power, but is declared to be inadmissible to prove its contents.

The next case is that of Plumstead *v.* Rudebaugh, 1 *Yeates* 503, which throws some doubt over the nature of the decision just mentioned; for the declarations of the agent being offered to show his agency, the court rejected them, saying this very point was fully argued and determined in bank in the same manner in Meredith *v.* Macoss.

In Nicholson *v.* Mifflin, 2 *Dall.* 246, and 2 *Yeates* 38, Bonsall, a scrivener, was offered to prove that the defendant had given a written authority to him to dispose of the premises, which had been mislaid. The court held, that the agent was not a competent witness to prove his own authority for the sale of lands in this way. The contents of the writing must be proved by other witnesses.

Livingston *v.* Swanwick, 2 *Dall.* 200, was a suit to recover the difference in a stock contract, and the plaintiff, having shown a contract signed by J. Anderson, offered Anderson as a witness to prove he had received a verbal authority from the defendant to make the contract. The defendant objected that Anderson was not a competent witness to prove his own authority. *Per Curiam.* —The witness is competent to prove every part of the transaction. He is not interested in the event of the suit, nor can the verdict in this case be given in evidence on the trial of the action for his commissions. He was a known established broker, and, unless he were admitted to give evidence of his instructions, (which were *oral* in this case, and are equally so in similar cases,) it would be impracticable to ascertain the facts.

In later times, the subject again occurred in M'Gunnagle *v.* Thornton, 10 *Serg. & Rawle* 152, and there Mr. Justice Duncan, delivering the opinion of the court, says: "J. Darragh, the agent, was a competent witness to prove his own authority to let for one year, notwithstanding some loose *dicta* to the contrary at nisi prius. It is the constant practice to admit agents to be witnesses for their principals, and every person is an agent, within the meaning of the rule, who makes a contract for another." 1 *Phill. Ev.* 99; 2 *Dall.*

[Grayson v. Bannon.]

200. Nor can it make any difference that it was a contract for land. It is not here a sale of land, but a lease, which is good, though by parol, by the very letter of the statute of frauds. But our statute does not make the agreement void: it restricts its operation as to the acquisition of an interest in the land. No title in fee-simple can be derived under it, and that was the principle of the decision in Nicholson v. Mifflin, 2 *Dall.* 246. But an action will lie to recover damages for the non-performance, and parol evidence will be admitted of such agreement; 4 *Dall.* 152; and that although the agreement was only with an attorney, who had but a parol authority. In the case of Wood v. Galbraith, and Turnbull v. Vance, Gen. Armstrong was admitted a witness to prove by parol his general agency for the late proprietaries.

And in M'Dowell v. Simpson, 3 *Watts* 129, Mr Brackenridge was held competent, in an ejectment, to prove that he had, as an agent of the plaintiff, given a lease to the defendant. Mr. Justice Kennedy says: " The general rule seems to be in favour of the competency of the agent, unless in cases where the principal is sued on account of the negligence of the agent. There he is interested; because the judgment against the defendant would be evidence in a suit by defendant against the witness. Having no interest in the event of the suit, why should he not be competent to establish, by his own testimony, his authority as agent?"

The weight of authority, therefore, especially in modern times, is in favour of the competency of the agent as a witness for his principal, in a suit brought by the principal against a third person; and I can perceive no reason for making a distinction between his competency to prove the existence and loss of a written power, and to prove its contents. Where the written instrument had been attested by witnesses, it would be necessary to call one of them, or if dead, or out of the jurisdiction of the court, to prove the handwriting. But where the instrument was not attested, it may be proved by any one acquainted with the handwriting, or the fact of execution: and if the witness offered is not interested in the event of the cause, nor disqualified by an infamous sentence, there is no principle upon which he can be rejected. A mere interest in the question, arising from the prejudice of the agent in favour of the authority under which he had acted, or from his commissions, goes to his credibility only, and not to his competency; and though evidence of the contents by a copy, or by the remembrance of others, would be more satisfactory to a court and jury, yet that is not a reason for rejecting the evidence in that case, more than in the numerous cases that daily occur, where testimony goes to the jury, to be estimated for what it is worth.

Nor can I see any reason for drawing a distinction between such testimony, when offered to prove an authority respecting land and other cases. It is not to establish a verbal power to make a contract binding real estate. Here the power asserted is a written

[Barker v. Maxwell.]

power, sufficient within our act against frauds to bind real estate, which power has been lost; and if the existence, and loss, and contents are satisfactorily made out, it is as much the case of a contract under a written power, as if the writing itself were produced. It frequently happens that the loss of deeds and other written instruments respecting land, is supplied by such evidence, and must be so to effectuate justice, considering the various casualties to which human affairs are liable.

No decided case, or opinion of elementary writers in English law, has been cited, to support the position that an agent, not interested in the event of the cause, is forbidden from proving his own authority, or the existence, loss, and contents of a written power to himself. In our sister states, the courts seem to have considered the law to be in favour of such evidence. In the proprietors of Kennebec *v.* Call, 1 *Mass.* 483, it is said by the court that an agent who has an appointment in writing must produce it, and cannot testify as to its contents, unless it be lost or destroyed. In Kirkpatrick *v.* Lisna, 3 *Bibb*, 244, an agent, whose authority was created by letter, was held a competent witness to prove its contents. In Connelly's Heirs *v.* Childs, 2 *Marsh. Ken. Rep.* 242, the witness had executed a deed for himself, and as attorney in fact for other heirs, and was called to prove the execution of the power of attorney under which he acted. It was held that, considered in the light of a mere agent, the witness was unquestionably competent, as well to prove the authority under which he acted, as to prove any other fact in the cause.

The decision on this point renders it unnecessary to say more on the other errors, than that as the case stood before the court below, these were rightly decided. The deposition of Craighead was properly rejected.

Judgment reversed, and a *venire facias de novo* awarded.