## Stevens *against* Hughes.

If several undescriptive warrants, granted to one individual, be located upon adjoining lands, the deputy-surveyor may return one general draft of the whole quantity of land, without running the division lines on the ground or marking them upon the return of survey: and such return vests a good title in the purchaser.

ERROR to the Common Pleas of *Franklin* county.

Samuel Hughes against Thaddeus Stevens, James D. Paxton, and others.   This was an action of trespass *quare clausum fregit*, which involved the question of title to the *locus in quo*.   The parties stated the following facts, which they agreed to consider in the nature of a special verdict:

Plaintiff claims under a warrant to Maurice Kennedy, dated 6th of September 1792, for 400 acres and allowance of land, adjoining land that day granted Pascal Hollingsworth, in Washington township, Franklin county.

Warrant to Pascal Hollingsworth, dated 6th of September 1792, for 400 acres and al. adjoining land granted Levi Hollingsworth, in the same township.

10th of September 1792; receipt of Francis Johnston, R. G. and David Kennedy, S. G. for purchase money of the above warrants and others.

19th of July 1799; letter of John Basely to John Holker, inclosing this receipt.

November 22d 1792; receipt of Mathew Henderson, deputy surveyor, to John Holker, for $60, in part for survey of 27 warrants in South Mountain, Washington township, Franklin county.

May 2d 1793; receipt of Daniel Henderson, assistant surveyor, for surveys made, $80.

8th of April 1799; deed of conveyance of John Holker to Samuel Hughes, for his lands in Franklin county and elsewhere.

Draft of Mathew Henderson, deputy surveyor, dated January 15th 1795, containing this return:

" This draft describes a parcel of land, situate in Guilford and

III. — 59

Green townships, in the county of Franklin.   The black lines represent a survey begun and carried on the 20th of June 1793, for Samuel Nicholson, in execution of his warrants in the names of Matthew Duncan, Eliza Duncan, Sarah Nicholson, John Cooper, William Duncan, and William Moulder, dated 3d of January 1793.   The circumstances intervening which prevented the completion of the surveys at the time were, that Henry Kaddle had an improvement and warrant adjoining the land intended to have been taken in; it was thought proper that Kaddle's survey should first be made, and bad weather coming on at the same time, the business was postponed until the 3d of April 1794, when a survey was made for Henry Kaddle, and on the 7th of the same month, at the instance of John Holker, who also claims the greater part of the same lands under part of 27 warrants, dated the 6th of September 1792, beginning with Robert Smith and ending with Alexander J. Dallas, the lines formerly run were revised and new ones run, represented above with red ink.   The surveys previously made for Mr Holker, and the intermediate vacancies and matters relative thereto, are all represented in a general draft, accompanying this, for the inspection of the board of property, and humbly submitted by

                                        MATHEW HENDERSON, D. S.
To Daniel Brodhead, Surveyor General of Pennsylvania.

N. B.—Mr Nicholson claims the whole of the land included within the black lines, on his first four warrants above mentioned, and also that space between the same and the Rocky Ridge, in part of his other two warrants.                                        M. H.
15th January 1795."

Draft of survey made by Thomas Poe, deputy surveyor, of 400 acres and al. made 21st of November 1808, for Samuel Hughes, on warrant to Maurice Kennedy.

Do. of same, made by same, of 401 acres, made 17th of November 1808, for Samuel Hughes, on warrant to Pascal Hollingsworth.

Receipt of Thomas Poe, deputy surveyor, for surveying fees paid by Samuel Hughes, dated January 21st 1811, November 13th 1811, and May 28th 1813.

January 8th 1811 ; return of surveys made by Thomas Poe, for Samuel Hughes, to surveyor general's office.

Lands assessed in South Mountain, in Washington and Guilford townships, from year to year.

Plaintiff also exhibits claim under warrant to John Finley, dated September 6th 1792, and survey on same by Mr Henderson and T. Poe, 382 acres and allowance, for Samuel Hughes.

Also, warrant to Robert Henry Duncan, for 400 acres, dated 6th of September 1792, and survey on same, by same, for Samuel Hughes.

Defendants claim under six warrants, to Samuel Nicholson,

[Stevens v. Hughes.]

dated 3d of January 1793, in names of Matthew Duncan, Elizabeth Duncan, Sarah Nicholson, John Cooper, William Duncan, and William Moulder.

The warrant to Matthew Duncan calls for 400 acres of land on the head waters of the Conococheague, in the South Mountain. The warrant to Elizabeth Duncan calls for 400 acres of land, adjoining land this day granted to Matthew Duncan, in the South Mountain. The warrant to Sarah Nicholson calls for 400 acres of land, adjoining land this day granted to Elizabeth Duncan. The warrant to John Cooper calls for 400 acres of land, adjoining land this day granted to Sarah Nicholson, in the South Mountain. The warrant to William Duncan calls for 400 acres of land, adjoining land this day granted to John Cooper, in the South Mountain. The warrant to William Moulder calls for 400 acres of land, adjoining land this day granted to William Duncan, in the South Mountain.

Survey and return thereon made by M. Henderson, deputy surveyor, 15th of January 1795.

This was the same return of survey as that stated in the plaintiff's claim of title. The title under these warrants became duly vested in the defendants.

The question presented was, whether the return of survey made by Mathew Henderson, in 1795, was sufficient, and vested a good title in the warrantee? or, whether the title of the defendants was not abandoned? The court was of opinion that the general survey and return of the whole quantity of land was not a valid return: and that the surveys and returns of each separate tract, in 1811, gave a good title to the plaintiff, for whom judgment was rendered upon the special verdict.

*Stevens,* for plaintiff in error. When the purchase money is paid to the commonwealth, there arises no presumption of abandonment; and as the survey of the defendants was first made and returned, the only question is, whether that was a good return. There was no necessity for running the division lines. 14 *Serg. & Rawle* 364. But if it be an irregularity, who has a right to complain? One who takes subsequent warrants and knowingly locates them upon land which had been previously appropriated? This is said in 8 *Serg. & Rawle* 181, to be against conscience, and not to be looked upon with favour: and in 3 *Binn.* 26, it is said that such knowledge estops the party from taking any advantage of such an irregularity. But although as to the commonwealth, it might be objectionable, yet if no objection be made, and the return be accepted, it does not lie in the mouth of a stranger to gainsay it. 1 *Binn.* 146; 1 *Wash. C. C.* 484; 13 *Serg. & Rawle* 382.

*Chambers,* for defendant in error. The title of the plaintiff was founded upon his warrants of 1792, duly and regularly exe-

cuted in 1808, and returned in 1811, and so remained without *caveat* or objection for .thirty years. This is a perfect title, unless there ·is an intervening one duly prosecuted. The defendants' warrants were of a subsequent date and have never been regularly executed or duly prosecuted by having surveys returned upon them, to this day. Each warrant originates a title to a distinct and separate tract of land, for which a patent is to issue; and this designation must be made within a reasonable time. *Act of 8th April* 1795; *Purd. Dig.* 523; 1 *Binn.* 146; 1 *Watts & Serg.* 166. A general connected draft is not recognised as the evidence of title, but as mere illustration.

The opinion of the Court was delivered by

KENNEDY, J.—This was an action of trespass for entering the lands of the plaintiff below, and cutting and carrying away the timber growing thereon. The plaintiffs in error were the defendants below. The parties, by agreement, stated a case in the nature of a special verdict, upon which the court rendered a judgment in favour of the plaintiff against the plaintiffs in error. The plaintiffs in error, by the case stated, admit the entry upon the lands and the cutting, &c. of the timber, but claim to be the owners thereof in fee. They derive their title from six warrants, dated the 3d of January 1793, each calling for 400 acres, though not particularly for the land in dispute, taken out and originally owned by Samuel Nicholson; upon which the deputy surveyor of the district, in 1794, surveyed 1626 acres 152 perches, by running and marking on the ground ·the exterior lines only, and returning, in 1795, into the surveyor-general's office, a general diagram thereof, without making any division lines, or designating, in any way whatever, what particular part of the whole body of the land was intended to be applied to each of the respective warrants. The defendant in error, who was the plaintiff below, derives his claim to the land from two warrants, bearing date the 6th of September 1792, each calling for 400 acres, but not for the land in contest, upon which surveys were made in 1808 and returned into the surveyor-general's office in 1811. The purchase money, in full, was paid to the state, for the lands mentioned in the warrants of both the parties, but no patents appear to have been issued upon any of them. Now, as the warrants, under which the parties respectively claim, do not appear to be descriptive of the land in controversy, the question of title, which remains to be decided, depends entirely upon the priority of survey, made and returned into the surveyor-general's office. If the survey made and returned by the deputy-surveyor upon the warrants under which the plaintiffs in error claim the land, be a good and sufficient appropriation of the land contained in it, it follows clearly that they are entitled to hold the same; and that the judgment of the court below ought to have been rendered in their favour. It seems to have been long

since well settled, that surveys of large bodies of lands are good where the exterior lines only are run and marked on the ground, either for a company or an individual, without running the division lines on the ground. *Woods* v. *Ingersoll*, (1 *Binn.* 150); *Mock* v. *Astley*, (13 *Serg. & Rawle* 385). See also *Morris* v. *Travis*, (7 *Serg. & Rawle* 222). And in *Ross* v. *M'Junkin*, (14 *Serg. & Rawle* 364), where two warrants, belonging severally to two persons, were surveyed together, without running or making a division line in any way between them, and a general diagram of the survey returned by the deputy-surveyor into the surveyor-general's office, the survey was held to be good and a sufficient appropriation of the land, so that those who entered upon it afterwards, adversely to the warrantees, were adjudged to be trespassers. Now if such a survey be good, when made under two warrants, owned by two persons severally, it is perfectly clear that it would be equally good if made under six or any greater number of warrants, owned severally by as many different individuals. And it is also perfectly clear, that it must be still less liable to objection, if possible, where all the warrants are owned by one and the same person at the time of making the survey, as was the case here. Because, as the whole of the land so surveyed belongs to the same person, a division of it is altogether unnecessary for the purpose of determining the ownership to any particular part of it. The only possible object for which a division can be required, would seem to be that of issuing patents for it, where an apportionment of it to the several warrants, mentioned in the return of the survey, may be proper, so that a patent may issue on each warrant and the State receive the full amount of fees, that is, $10 upon each patent. But a division and appropriation for this purpose can be made by protraction in the surveyor-general's office, as well as by going on the ground; for it can be a matter of no concern to any one how the division shall be made. The running and marking on the ground the exterior lines of the survey of the whole body of the land, is quite as good notice to the world of its having been appropriated, as if it had been divided and distributed among the several warrants, by running and marking the lines on the ground, around the portions respectively intended to be appropriated to each warrant.

Judgment reversed, and judgment for the defendants below.