## Hughes *versus* Stevens.

43  197
188  592

*Warrant exhausted by Return of Survey.—Resurvey made without Order invalid.—Commencement of Title under descriptive, indescriptive, and shifted Warrants.*

1. Though the official surveyor of the Commonwealth may correct his survey while the warrant remains in his hands, his control over it ceases after his return has been made to the land office, and no resurvey thereon without an order for that purpose is of any validity whatever, either against the Commonwealth or any other claimant, and this whether the first return has been formally accepted or not.

2. Where a warrant is descriptive and not shifted in its location, the title of the warrant commences with its date.   If shifted, the title commences when the survey is returned and accepted, except as against those who have actual notice of the survey, in which case the title commences with the survey, as it does also where the warrant is indescriptive.

3. The rule which, in case of conflicting rights, requires the surveyor to execute the warrants that are placed in his hands in the order of priority has no application to such as are indescriptive, for they are not conflicting.

4. Where several indescriptive warrants placed in the hands of the surveyor at different times were returned on the same day, no presumption arises that the first delivered to the surveyor were executed first.   In such cases priority of execution is matter of proof rather than presumption.

5. Where surveys are returned to the land office, and marked "in dispute" this entry has the effect of a *caveat* against their acceptance, and no patent could issue prior to the Act of January 22d 1802, to either claimant until the dispute was decided.

6. Where it was apparent from the return of the deputy surveyor on several indescriptive warrants placed in his hands at different times, but returned to the land office at the same time, that certain of the surveys had been made prior to the others, it was held that the surveys first in time were first in right.

[Hughes *v.* Stevens.]

ERROR to the Common Pleas of *Franklin county*.

This was an action of ejectment by J. Holker Hughes against Thaddeus Stevens, in which the following case was stated for the opinion of the court in the nature of a special verdict:—

John Holker procured from the Land Office of Pennsylvania twenty-seven warrants, commencing with Robert Smith and ending with Alexander S. Dallas, each for four hundred acres of land, bearing date the 6th day of September, A. D. 1792. The warrants that cover the land in dispute were issued in the names of Pascal Hollingsworth, Maurice Kennedy, John Duncan, Robert Henry Duncan, John Findley, and Edmund Duncan, and are part of the twenty-seven warrants above mentioned. These warrants are indescriptive, and call for land in Washington township, Franklin county, Pennsylvania. John Holker paid the purchase-money and surveying fees for twenty-seven warrants, and lodged them in the hands of Matthew Henderson, deputy surveyor of Franklin county, for location and survey, as per his return hereinafter recited. Samuel Nicholson, for himself and General William Duncan (who paid the purchase-money), took out six warrants, dated the 3d day of January, A. D. 1793, in the names of Matthew Duncan, Eliza Duncan, Sarah Nicholson, John Cooper, William Duncan, and William Moulder. These six warrants were also indescriptive, and were lodged in the hands of Matthew Henderson, deputy surveyor, as above stated, for Franklin county, to be located and surveyed by him, as per his return hereinafter recited. On the 15th day of January, A. D. 1795, Matthew Henderson forwarded to the land office, at Harrisburg, a draft of the surveys made by him, on the warrants of John Holker, and on the warrants of Samuel Nicholson and William Duncan, accompanied by the following return: "This draft describes a parcel of land situate in Guilford and Green townships, in the county of Franklin. The black lines represent a survey begun and carried on the 20th of June, A. D. 1793, for Samuel Nicholson, in execution of his warrants in the names of Matthew Duncan, Eliza Duncan, Sarah Nicholson, John Cooper, William Duncan, and William Moulder, dated the 3d day of January, A. D. 1793. The circumstances intervening which prevented the completion of the surveys at the time were, that Henry Kaddle had an improvement and warrant adjoining the land intended to be taken in; it was thought proper that Kaddle's survey should first be made; and, bad weather coming on at the same time, the business was postponed until the 3d day of April, A. D. 1794, when a survey was made for Henry Kaddle, and on the 7th day of the same month, at the instance of John Holker, who also claimed the greater part of the same lands, under part of twenty-seven warrants, dated the 6th day of Sep-

[Hughes *v.* Stevens.]

tember, A. D. 1792, beginning with Robert Smith and ending with Alexander J. Dallas; the lines formerly run were revised and new ones run, represented above with red ink.	The surveys previously made for Mr. Holker, and the intermediate vacancies and matters relative thereto, are all represented in a general draft, accompanying this for the inspection of the board of property, and humbly submitted by

		"MATTHEW HENDERSON, D. S.

"To Daniel Brodhead, Surveyor-General of Pennsylvania.

"N. B.—Mr. Nicholson claims the whole of the land included within the black lines on his first four warrants above mentioned, and also that space between the same and Rocky Ridge in part of his other two warrants.				M. H."

This draft and survey of Matthew Henderson was returned into the land office, marked "in dispute," and remained on the disputed files of the land department until 1843.	The Pascal Hollingsworth, Maurice Kennedy, John Duncan, John Findley, and Edmund Duncan warrants, owned by John Holker, were located by Matthew Henderson for Mr. Holker, on the land embraced within the red lines of his draft.	The Matthew Duncan, Eliza Duncan, Sarah Nicholson, John Cooper, William Duncan, and William Moulder warrants, owned by Samuel Nicholson and General William Duncan, were located by Matthew Henderson for them, on the land embraced within the black lines of his draft.	Matthew Henderson, in locating the Holker warrants, and also the warrants of Samuel Nicholson and General William Duncan, only run the exterior lines, and did not locate each warrant separately, on a distinct and separate parcel of ground. On the 21st day of November, A. D. 1808, John Holker procured Thomas Poe, deputy surveyor of Franklin county, to go upon the land now in dispute, and to locate and survey each of his warrants, contained in the Matthew Henderson survey, separately, as per his return.	These warrants thus located by Thomas Poe (and being a part of the Holker warrants, referred to by Matthew Henderson in his return), covered all the land embraced within the red lines of the Matthew Henderson draft, including almost all the land within the black lines of the same draft, and by which Samuel Nicholson and General William Duncan claimed.	On the 8th day of January, A. D. 1811, Thomas Poe returned these surveys into the land office for John Holker, and they were on that day accepted.	The title to the Holker warrants and surveys, by sundry good and sufficient deeds and conveyances, became regularly vested in J. Holker Hughes, the plaintiff.	The taxes on the land now in dispute were regularly assessed with Hughes's other lands from year to year, and paid

by J. Holker Hughes and those under whom he claims, from the year 1808 until the present time. On the 16th day of April, A. D. 1796, Samuel Nicholson sold his interest in the land to General William Duncan. On the 8th of January 1828, General William Duncan, by his attorney in fact, Matthew Duncan, sold the land in question to Thaddeus Stevens, the defendant in this suit, who paid most of the purchase-money to said attorney in fact, Matthew Duncan. Samuel Hughes (the father of the present plaintiff) having become the owner of the Holker warrants and surveys in the year 1837, brought an action of trespass, *quare clausum fregit*, against Thaddeus Stevens to No. 1 of January Term, A. D. 1838, of the Court of Common Pleas of Franklin county, Pennsylvania, for alleged trespasses committed by said Stevens, in cutting and coaling the timber growing on the land now in dispute. The parties made a case stated in the nature of a special verdict, in which they agreed to submit the title to the land to the judgment of the court, and if judgment on the title were given for the plaintiff, the damages should afterwards be assessed by arbitrators, writ of inquiry, or otherwise. The Court of Common Pleas adjudged the title to be in Hughes (the plaintiff), and damages were assessed at $495, and judgment entered therefor on the 20th day of November, A. D. 1840. A writ of error was sued out, and on the 20th of June, A. D. 1842, the Supreme Court reversed the judgment of the Court of Common Pleas, and judgment was entered for the plaintiff in error (Stevens) on the case stated. (See report of the case, 3 W. & S. 465.) The land in dispute in that suit is the same land for the recovery of which this ejectment has been brought. In pursuance of the decision and judgment of the Supreme Court, Thaddeus Stevens obtained patents from the Commonwealth dated the 7th day of July, A. D. 1843. And the surveyor-general in his office divided the original survey of Matthew Henderson, and appropriated the land embraced in said survey to the several warrants then held by Thaddeus Stevens, so as to issue patents for the same. Thaddeus Stevens paid the office fees and received the patents. At this time the Matthew Henderson survey of the 15th of January, A. D. 1795, was marked accepted. After the aforesaid judgment, and the issuing of the patents, Thaddeus Stevens paid to General William Duncan the balance of the purchase-money, to wit, $500, and received from him a deed dated the 2d day of August, A. D. 1855. Thaddeus Stevens brought an action of ejectment for the land in dispute in this suit against Samuel Hughes and J. Holker Hughes, to No. 151 of August Term 1843, of the Court of Common Pleas of Franklin county. On the 1st day of April, A. D. 1846, the defendants in that action filed the following disclaimer of title, to wit: "The defendants

[Hughes *v.* Stevens.]

in the above action disclaim title to one hundred and eighty-two acres or thereabouts (supposed to be included in the plaintiff's claim), adjoining lands of James Beard, John Vance, and land surveyed on a warrant to Pascal Hollingsworth, defendants not being in possession of the same after the issuing of the writ.

"JOHN F. DENNY,

"April 1st 1846.                    "Attorney for defendants.

"To Thos. Bard, Prothonotary."

On the same Thaddeus Stevens discontinued his ejectment. J. Holker Hughes afterwards cut timber on the land and coaled it for the use of his furnace. Thaddeus Stevens brought an action of trespass *quare clausum fregit* against said Hughes, to No. 2 of August Term, A. D. 1854, of the Court of Common Pleas of Franklin county. The defendant (Hughes) pleaded *liberum tenementum*. The plaintiff (Stevens) replied the judgment of the Supreme Court as an estoppel, and as conclusive of the title. Issue was joined and judgment was given by the Court of Common Pleas for the defendant (Hughes). The plaintiff (Stevens) sued out a writ of error, and the Supreme Court, on the 15th day of July, A. D. 1858, reversed the judgment of the court below, and awarded a *venire facias de novo*. The case was again tried in the Common Pleas, a verdict given in favour of the plaintiff (Stevens) for $500 and costs, and judgment subsequently entered on the verdict. (See report of the case in 7 Casey 381.) The land in dispute is woodland, and is now all situate in Guilford township, Franklin county, Pennsylvania. For the particular questions raised and decided upon the trial of the action of trespass *quare clausum fregit*, entered to No. 1 of January Term, A. D. 1838, by the Court of Common Pleas of Franklin county, between Samuel Hughes, plaintiff, and Thaddeus Stevens, defendant, and also in the case of Thaddeus Stevens against J. Holker Hughes, entered to No. 202 of August Term, A. D. 1854, the Court is referred to the records in said cases, and the reports thereof respectively, in 3 W. & S. 456 and 7 Casey 381. All the papers and documents in any way referred to are made part of this case stated.

If the court be of the opinion, upon the foregoing statement of facts, that the title to the land in dispute is in the plaintiff, then judgment to be entered for the plaintiff for said land; but if not, then judgment to be entered for the defendant. The costs to follow the judgment, and either party reserving the right to sue out a writ of error therein, without affidavit or recognisance.

There are several "returns," "records," and "drafts" referred to in the case stated, but as they were not to be found in the paper-books, it was not possible to include them in this report.

April 19th 1862, the court entered judgment for the defendant.

This writ was then sued out by plaintiff, for whom the following errors were assigned:—

1. The court erred in entering judgment for the defendant in the case stated.

2. The court should have entered judgment for the plaintiff in the case stated.

*Reilly & Sharpe* and *John Cessna*, for plaintiff.

*William McLellan*, for defendant.

The opinion of the court was delivered, June 26th 1862, by
STRONG, J.—The first surveys made on the warrants under which the plaintiff claims, were returned into the land office on the 15th day of January 1795. The warrants had therefore then performed their office. The deputy surveyor had exhausted his power. No act which he could do after having made the return could enlarge or diminish the rights of the warrantee. The warrant was no longer in his hands, for he had sent it back to the surveyor-general, with a description of the mode of its execution. That a resurvey amounts to nothing without an order for it, may be shown by abundant authority. It has been asserted from the very beginning of the administration of our land system, and it has never been seriously questioned: Drinker *v.* Halliday, 2 Yeates 89; Porter *v.* Ferguson, 3 Id. 60; Smith *v.* Faltz, 4 S. & R. 478; Deal *v.* McCormick, 3 Id. 343; Vickroy *v.* Skelly, 14 Id. 377; Oyster *v.* Bellas, 2 Watts 379.

Nor does it matter that the return has not been formally accepted. With the acceptance, the deputy surveyor has nothing to do. That is a matter exclusively between the Commonwealth and the purchaser. Without an order of resurvey, therefore, there was no authority in the deputy surveyor to locate the plaintiff's warrants a second time, and his attempt to do so was an entirely unofficial act, which gave to the warrantee no rights, either against the Commonwealth or any other claimant. That the surrender of the warrant and the return of the survey made thereon, determines the authority of the deputy survey without regard to the subsequent action of the land office, is not only reasonable, but it is the doctrine of the cases. Thus, in Deal *v.* McCormick, it was said that it is the completion of the survey on the ground that renders a subsequent survey invalid. In that case the first had not been accepted, yet the second was void. So in Drinker *v.* Halliday, the authority of the deputy was said to expire when the survey was complete on the ground. It is not meant to say that the deputy may not correct his survey while the warrant remains in his hands, but certainly when it has passed from him into the land office, his power ceases.

[Hughes v. Stevens.]

Holker, under whom the plaintiff claims, acquired nothing, then, as against any prior appropriation of the land, by the re-surveys which he caused to be made in 1808, and returned into the office in 1811.    These surveys and returns may therefore be thrown out of the case, for whatever might be the effect of their acceptance as against any persons claiming from the Common-wealth by title acquired after 1811, they cannot affect the Nichol-son surveys made in 1793-4, and returned January 15th 1795. The plaintiff must stand or fall with the first surveys, and the rights of the parties depend upon what was done with the war-rants before they were returned into the land office.

The twenty-seven warrants of Holker were dated September 6th 1792.    They were all indescriptive.    The six warrants of Nicholson, under which the defendant claims, were dated Janu-ary 3d 1793.    They also were indescriptive.    All these war-rants were directed to the same deputy surveyor.    Precisely when they came into his hands does not appear, but surveys were made upon them all, and all the surveys were returned on the same day, January 15th 1795.    The land embraced in the sur-vey of four of the Nicholson warrants, being the land now in controversy, was marked in the return as in dispute, and the draft and survey remained on the disputed files until 1843, when a patent was granted to the defendant, who had succeeded to the Nicholson title.  It then appears that the warrants of Holker were the oldest, but that the returns of the surveys on both his and Nicholson's were simultaneous.    Neither party has any advantage in priority of return.    If, therefore, the title com-menced with the date of the warrants, that of the plaintiff would be the better, because older.    But it did not.    As already stated, the warrants were indescriptive.    The rules which define the inception of an original title are plain, and thoroughly set-tled.    Where a warrant is descriptive, and not shifted in its loca-tion, title commences with its date.    If it be shifted, the title will not commence until the survey be returned into the land office and accepted, except as against persons who have actual notice of the survey.    In the excepted case, it commences with the survey.    But when the warrant is indescriptive, title is ac-quired under it only from the time of the survey: Lessee of Lauman v. Thomas, 4 Binn. 51; Lilly v. Pascal, 2 S. & R. 398. It never has been held that the holder of an indescriptive war-rant acquires any interest in land, even by relation, until his warrant has been located by a survey.    Until then, such war-rants give no title to land whatever: Heath v. Knapp, 10 Watts 405; Shoemaker v. Huffnagle, 4 W. & S. 442; Lessee of Arm-strong v. Morgan, 3 Yeates 529.    Until then, there is nothing in the land office or on the ground to give the Commonwealth or a purchaser notice that the land has been appropriated.

[Hughes *v.* Stevens.]

As between the holders of the Holker and the Nicholson warrants, then, the superiority of right depends not upon the date of the warrants, but upon the priority of the surveys made under them; for it is not pretended that all the surveys were not returned within a reasonable time.

It is argued on behalf of the plaintiff that the return made into the land office shows the Holker warrants to have been first in the deputy surveyor's hands. It is next insisted that it was the duty of the officer to execute warrants according to their priority, and hence that it must be presumed the Holker warrants were first located. The argument is not supported by the facts of the case. The return does not show, nor is there anything in the case stated to show, that the warrants of Holker, under which the plaintiff claims the land in contest, were in the deputy surveyor's hands on the 20th of June 1793, when the Nicholson warrants were located. And even if they were, it is not clear that it was the duty of the surveyor to locate them first. There can, therefore, no presumption arise that the surveys made under them were earlier than those which were made for the four Nicholson warrants. It was said, indeed, in Gray, *v.* McCleary, 4 Yeates 495, that the rule always has been, where there are conflicting rights in the hands of the deputy to be executed, to execute them according to their priority. The rule is undoubtedly reasonable and just. But it can have no application to indescriptive warrants. They are not conflicting. Applications and descriptive warrants may conflict, for they may call for the same tract of land. Such were the applications in Gray *v.* McCleary. With such in his hands it would open a wide door for favouritism, confusion, and fraud, were the deputy surveyor permitted to locate the younger first. But a deputy surveyor who holds two indescriptive warrants lodged with him by two different owners, is under no obligation to make a survey upon either of them until the owner of the warrant shows him the vacant land which he wishes to appropriate. In one of the directions given by the land office to district surveyors, they are required to execute warrants within six months, "if the party or his agent will attend and show the lands to be surveyed," and when a survey is made, to make return thereof within six months, if the party pay the fees, or to make return that the party did not show the lands, or did not pay the fees, or some other reasonable excuse. And this court has held that it is the duty of the owner to show the land intended to be taken up: Healy *v.* Marsh, 5 S. & R. 187; Hunter *v.* Meason, 4 Yeates 108. It would be intolerable were the holder of an indescriptive warrant, a warrant that gives no notice of any land taken, permitted to put it into the hands of a deputy surveyor, show him no land to be surveyed, but rest supinely until some junior warrantee, having

[Hughes *v.* Stevens.]

found vacant land, had caused it to be surveyed under his warrant, and then step in and appropriate it to himself. This would be reversing the maxim that the law favours the vigilant, and it would render it unsafe for any one to purchase a warrant until he had satisfied himself that there were no unfilled indescriptive warrants in existence. The plaintiff, therefore, can bring to his aid no presumption that the surveys under the Holker warrants were made on the land in dispute before it was surveyed for Nicholson. Nor does the matter depend upon presumption. The return of Henderson, the deputy surveyor, shows that they were not. In that it appears that on the 20th day of June 1793, a survey was begun for Nicholson on his six warrants, and was carried on until four of them had been filled, covering the land now in contest. Nothing in the return indicates that up to that time the land had been appropriated for any of the Holker warrants, or that it had even been shown to the surveyor or by the warrantees. Something occurred to prevent the location of the other two Nicholson warrants, and it was not until the 7th April 1794, nearly ten months afterwards, that Holker interposed a claim for the lands. Then the lines run June 20th 1793 were revised (not another survey made), and new lines were run embracing other lands to fill in part the remaining two warrants. Surveys had previously been made for Holker or some of his batch of twenty-seven warrants, but none on the lands covered by Nicholson's first four warrants. Then all the surveys were returned together. Thus it is apparent from the returns that the Nicholson surveys and appropriations were prior in time. And as all the surveys were founded on indescriptive warrants, as between the parties, the surveys which were first in time were first in right.

They were returned, however, as in dispute. What then? Marking them as in dispute had the effect of a *caveat* against their acceptance, and they remained unaccepted until 1843. It was a *caveat* against Holker, as much as against Nicholson. The land office could not issue a patent to either until the dispute was decided. At that time there was no Act of Assembly which provided that a *caveat* should not continue to bar the issuing of a patent to the person against whom it was entered longer than two years, unless proceedings be instituted to bring it to a determination. The Act of January 22d 1802 had not been passed, and when it was enacted, it made provision only for *caveats* "thereafter to be entered." And even if it had covered this case, it was as much Holker's duty to bring the dispute to a determination as it was Nicholson's. The *caveat* stood in the line of his title. If Nicholson could not avail himself of the surveys which Henderson the deputy surveyor made while the *caveat* was pending, for the same reason Holker could not.

[Hughes *v.* Stevens.]

It is no importance, then, to inquire whether a patent was properly issued to the defendant in 1843 on the faith of the judgment reported in 3 W. & S. 465. The question now is whether the plaintiff is entitled to recover. Let it be that this ejectment is to be regarded as a substantial appeal from the decision of the board of property—the defendant would be enti-. tled to the patent, for he holds the superior right.

Did the case demand it, doubts might be suggested whether the resurveys made in 1808, at the instance of Holker, did not amount to an abandonment, so far as he was concerned, of his *caveat* against a grant of a patent to Nicholson. As a foundation of title in himself, they were worthless, as we have seen. But did they not amount to an assertion that he did not rely upon anything which the surveyor had previously done? The *caveat* was not a formal one. It was a mere consequence of his interposing a claim to the lands, thus causing the surveyor to note them as in dispute. Why would not a withdrawal of his claim cause the *caveat* to fall? If it would, a resurvey without an order for it, though ineffective to give title to him, might be efficient to destroy his objection to another title. In Lessee of Steele and Wife *v.* Finley, 3 Yeates 169, it was laid down a clear rule of law that if a person obtains a second survey on a warrant which has once been filled, he thereby abandons his first survey, if the same was not returned into the surveyor-general's office before an adverse survey is made, provided the same (*i. e.*, the second) was done with his consent of the party, unless the contrary appears. It must be admitted that Steele *v.* Finley is in some respects unlike the present case; but in others there is a resemblance. We, however, express no opinion upon this question, for the case does not demand it.

Nor need we enter into a consideration of the effect of the verdict and judgment in the action of trespass *vi et armis* brought by the defendant against the plaintiff, in which a case having been stated, the title was adjudged to be in the defendant. Without that, for the reasons above stated, the plaintiff cannot recover.

The judgment is affirmed.

Thompson, J., was absent.

Woodward, J., dissented.