4ws348
188  583

# Maris *against* Hanna.

In making an official survey intended to adjoin an old survey, if by mistake it does not adjoin, the error may be corrected at any time before the survey be returned : and a settler or warrantee making a survey and marking a line, if he find he has not a sufficient quantity, may abandon that line and take more at any time before another person acquires right to the adjoining land.

ERROR to the District Court of *Mercer* county.

Thomas Hanna against Robert Maris, John Maris and Joseph Maris. This was an action of ejectment for 40 acres of land. The opinion of the court contains the statement of the case.

*Sullivan*, for plaintiff in error.
*Stewart* and *Pearson, contra*.

The opinion of the Court was delivered by

HUSTON, J.—It seems that in making the survey of the donation tracts, the surveyor began at a point and ran north the breadth of four surveys, then west the length of a survey, then south the breadth of four surveys, then west the length of a survey, and so on. This left the south boundary of each alternate tract an open line. It would inevitably happen, that after running four miles, then west some distance, and then south four miles, the southern ends of these two long lines would not be directly east and west of each other.

The line *ab* continued, ought to have struck the line *cd*, instead of which it ran to *f*. Adjoining the donation surveys at the land in dispute, the Population Company had left a piece of land, not included in their surveys. A person called M'Can settled on this vacant land, in 1800, and in 1803 got a surveyor to run round this land, to ascertain the quantity and designate his boundaries. In running north he struck donation tract No. 457, and followed it to strike the corner of tract No. 467, at *c*, but did not find it. In fact, it was some 30 or 40 perches north of him: but on his examination, he swore he intended M'Can's survey to adjoin and be

[Maris v. Hanna.]

bounded by the donation survey on the north; and so M'Can intended and thought. This was not an official survey of M'Can's. M'Can died, and his heirs sold the western half to Elliot, and the eastern half to Mathers, and Mathers the northern end of his half to Jenkins, who, after living on it some time, went away, and had been off it 20 or 21 years. In 1839, Thomas Hanna went on to this part left by Jenkins, cleared land, and in 1839 or 1840, built a house, and has resided in it ever since. He supposed there were 100 acres there; he always said he did not know where his line was, but the donation land was his boundary on the north. The defendants proved that Hanna said he had bought the right of Jenkins. Nobody, however, had seen his deed, and the court below said it was not material whether he had a deed or not, and said rightly.

Mr Banks owned donation tract No. 466, the southern line of which was left open. In looking for that line, they struck on the line run for M'Can in 1803; but on blocking the trees the growth did not count old enough for a donation line run in 1786, by 16 years. A surveyor of some experience, and who knew the manner in which the donation tracts had been surveyed, was called, and on making a full examination, found all the corners of all the donation tracts, and Mr Banks correctly directed the surveyor to run the line of 466, from corner to corner found on the ground. Hanna was present, and said his claim was bounded by the donation lands, and he claimed to the true line then run. Maris, sen'r. and at least one of his sons were present, and heard this claim. Maris bought donation tract 466, or part of it, from Mr Banks, and moved on to it. It will be seen that the true donation line was at one end a good distance north of the line run for M'Can in 1803. The dispute is about the space between the correct donation line and that line run for M'Can. There is a good deal of land law among backwoodsmen at home; and this, with some truth, has generally a large portion of error. Maris, although living on a patented tract, cleared over on the land claimed by Hanna, who at once warned him of his claim, and then brought this ejectment.

It was contended for Maris that as M'Can had made a settlement and cleared 20 acres, and sold to Elliot and Mathers, there was no land there which was vacant and could be held by improvement; and this would have been true if Mathers had not sold to Jenkins. At one time Elliot and Mathers and Jenkins all resided on the tract, and the origin and foundation of all their titles was M'Can's actual settlement. No warrant had been taken out, and no official survey had been made. Elliot and Mathers and Jenkins held each his part in severalty. M'Can's heirs sold to Elliot up to the donation line, so to Mathers, and Mathers sold to Jenkins, describing the donation land as his northern boundary. As all these three held by improvement, any one could abandon his

[Maris v. Hanna.]

part; and when clearly abandoned, another might go on and obtain a right to it by actual settlement. Jenkins was absent more than 20 years, and Hanna could obtain it. The land was bounded north by donation land, west by Elliot's, south by Mather's, and east by ————; it was far less than 400 acres; and it was idle and absurd to say the mistaken line run by the surveyor for M'Can could prevent him from extending to the donation line, and so the court very correctly told the jury.

But the defendants had some persons who proved that Hanna said he had Jenkins's title, and insisted that as M'Can had that line run, and Jenkins claimed under him, Jenkins and Hanna were bound by that line. The court considered the case as if this had been shown by a deed from Jenkins to Hanna. I have said all the former deeds from M'Can called for donation land on the north; and the court instructed the jury that even in making an official survey intended to join an old survey, if by mistake it does not adjoin, this may be corrected at any time before the return of survey; and a settler or person having a warrant and making a survey and marking a line, if he finds he has not quantity enough, may abandon that line and take more, at any time before any other person acquires right to the adjoining land. And in this case, when the surveyor run and marked the correct donation line, which had been left an open line, Hanna was along, and said his land came to that line. M'Can could have done so, or Jenkins; they all called for the donation land, and Hanna could have done so with a deed from Jenkins in his hand. That line run by mistake bound nobody, until some person took a warrant or made a settlement outside of it, without notice that it was abandoned, and that the donation line was intended to have been and had now become the true line. There is nothing wrong in the charge; the law was correctly stated.

Judgment affirmed.