# W. N. Humphrey, and J. G. Allen, Guardian of J. M. Humphrey, *v.* Ninian Cooper, Appellant.

*Land law—Surveys—Boundaries—Material lines—Question for jury—Review.*

In an action of trespass for an alleged wrongful cutting of timber, it appeared that the surveyor who located a block of nine tracts, in 1794, discovered before making his return that he had overstepped the boundary of an older survey, forty-eight rods; he then shortened the lines of the block on his plot that number of rods, and adopted the older survey as an adjoiner on that side. Apparently, from the returns, all the land lost by the mistake was taken from the three tracts abutting on the older survey, instead of being apportioned among the nine tracts of the block, by a change of the interior lines. But there was evidence that one of the interior lines had been relocated by marks on the ground parallel with and fifty rods east of the line first adopted. *Held,* that while an actual line run on the ground and remarked as the division line of the tracts would control and fix the boundaries of the tracts with relation to each other, yet, as the evidence bearing on the question was contradictory, the court properly left it to the jury to find whether the second line had really been run as a division line of the tracts in the block.

Where the trial judge in his charge alludes to a wholly irrelevant fact, yet at the same time gives the jury to understand that such fact has no bearing on the question at issue the Supreme Court will not reverse, unless it appears that the jury were, or might have been, misled by the irrelevant allusion.

Argued Oct. 12, 1897. Appeal, No. 47, Oct. Term, 1897, by plaintiff, from judgment of C. P. Jefferson County, May Term, 1894, No. 320, on verdict for defendant. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for an illegal cutting of timber. Before HARRY WHITE, P. J., of the 40th judicial district, specially presiding.

The facts appear by the opinion of the Supreme Court.

The court below charged in part as follows:

The plaintiffs claim the timber to have been cut by the defendant on warrant No. 2983, while the defendant denies this and claims the land was not on 2983, but was on 2981, which he, the defendant, owned. We will now pause right here to go

over in detail the title of the defendant—that is, the paper title of the defendant. There was a warrant issued on December 13, 1792, No. 2981, to Wilhelm Willink and the Holland Company, which was executed by W. P. Brady on November 7, 1794, and returned on October 8, 1802, the same day that warrant 2983 was returned. Now the defendant has traced up title from the commonwealth to himself—paper title, in this warrant 2981. Some matters here, gentlemen, are not in dispute, and we need not waste time discovering how they are. Now it is not denied by the defendant really that he made a contract with parties in writing who cut the timber on the land in question. It is clear also, as we have said, that both these warrants were dated the same day, and both came to the hands of William P. Brady, the deputy surveyor. It is also clear that upon the same day, so far as the record evidence and the evidence before us shows, they were both located. Neither is it disputed that these warrants were located by the surveyor going on the ground and locating at least the outside lines of them; and while it may not be absolutely conceded all around, yet it would appear that some eight other warrants to the Holland Land Company or this Willink party, came to the hands of the surveyor at the same time, and were located and returned at the same time; and this may be called a block of warrants that seem to have been executed together. It is also beyond dispute that Nichols & McPherson warrants 3931 and 3932, older than these warrants 2983 and 2981, were located upon the ground previously to them, and well located west of the proposed location of warrants in hand. [It also appears beyond denial that to the east, Timothy Pickering & Co. warrant 122 was located, and is of an older date than those in contention here. First, the Nichols & McPherson warrants located west, Pickering to the east. The holders of the Nichols & McPherson and the Pickering would hold a better title because they are prior warrants to the land they covered than the persons claiming the land on these warrants in contention. It is also conceded that somewhere between the Nichols & McPherson warrants and this Pickering warrant, to the east of the Nichols & McPherson line, these warrants 2983 and 2981 were actually located.] [3] With these conceded facts and matters before us we must discover then where these warrants 2983 and 2981

were actually located. In this behalf it is material for us to keep in mind that the claim of the plaintiff is that this warrant 2983 was so located as to embrace this land in dispute. . . .

Now the actual work upon the ground overcomes the prima facie presumption that the survey was made as returned. So then taking these drafts as returned, we may take this a little further. If we would begin on the east line of Nichols & McPherson and measure east for 2983, 461 rods to a post; then we would commence at the end of that distance and would measure north locating 2981; measure east from there 477 rods to an ironwood; the prima facie presumption is then that 2983 would go its full distance to the east and 2981 would commence where it left off and go 477 rods to an ironwood. Now, that is the prima facie presumption; and this connected draft from the land office, that has been offered in evidence, shows the same thing. Now, that prima facie presumption remains until it is overcome by the actual work on the ground. . . . [A difficulty here, however, is encountered in this case, that the Pickering warrant, a senior one and well located, is upon the east; hence the contention here. I fancy the contention in this case results from that fact. We are thus brought face to face with the dispute upon the eastern line primarily. And right here again we may make plainer if possible some general legal principles about the location of warrants; and we may repeat a little. When the commonwealth grants a warrant and places it in the surveyor's hands and he locates it, no future warrant can be granted and located so as to interfere with this former one. The holder of the first will, as a rule, have the better title as against a later one. That applied here would give the holders of the Nichols & McPherson warrants 3931 and 3932 on the west, and of the Pickering No. 122 on the east, a paramount or better title to the lands they covered than the holder of any subsequent warrants laid upon them. This is, to be plain, if these warrants 2983 and 2981, in contention here, were laid in whole or in part upon the Nichols and McPherson on the west, and on the Pickering on the east, they would not give good title to the land so previously covered by the older Nichols & McPherson and Pickering warrants. In other words, the first warrant laid takes the better title to the land.] [4]

Then again, it is a rule that when a warrant has been located

and the survey on it made and returned to the land office, as we have already explained to you, the presumption is that it was made as returned, that is, it was made and located on the ground, according to the lines, courses and distances to the natural objects and monuments found marked on such returned draft. This presumption, we repeat, continues until it is overcome by work on the ground. That is, the presumption may be overcome in a case of dispute by showing from the location of the ground, the situation of the objects or monuments called for on the draft or the location of tracts called for as adjoiners, that the actual location cannot have been as it appears from the draft returned. This rule has been stated and illustrated by Justice WILLIAMS recently in the case of Bloom v. Ferguson, 128 Pa. 380, where he says, speaking upon a kindred subject:

" This rule is applicable to a single survey and to a block of surveys with equal force. If a survey has no work of its own it must call to its aid that of the block of which it is part; for, the legal presumption that a survey was made as it was returned cannot be made to help in the location of a tract, until a starting point has been identified somewhere on the lines of the block from which the work of tracing the lines can be securely begun. But with an original mark for a starting point, the lines may be run in accordance with the legal presumption, and will hold the tract against all younger surveys. The work found on the ground is the basis. It fixes the footsteps of the surveyor, so far as it exists, and from it the legal presumption projects the lines along the courses and distances as returned, and incloses the tract." When, then, the question arises about the actual location of a survey returned, we go to the ground to search for the marks there, the work there. The trees or monuments marked or set by the surveyor there when he located the warrants are the first, now mark you, are the first and best evidence of where the line is. If no actual marks can be found, we next look at the calls for adjoiners. If there are no calls, then the courses and distances of the draft are followed. Thus the legal rule is : First, actual work or marks ; second, if no marks, the adjoiners called for ; if none of these, then third, the courses and distances are followed. . . .

The next rule, if you can't find marks, is the calls for adjoiners. [If a survey commences at Nichols & McPherson and

goes several hundred rods east, if you please, to the Pickering
—say it calls for 200 rods, and the Pickering warrant wasn't
found until they ran 300 rods, that is where the survey would
go.] [5] It would go to what is named the call—that is, the
call of the adjoiner upon the east. Now these are the rules. If
there are no marks and no calls, then you follow and take up
the courses and distances. . . . Now, if it clearly appears and
you are satisfied that the land in dispute, or any part of it, on
which the timber was cut is on warrant 2983, the plaintiff is en-
titled to recover three times the value of the timber so cut that
was growing upon the property and was covered by 2983. If
none of the land on which the timber was cut was in 2983, but
was in 2981, then the defendant must recover.

With these legal principles before us, we take up draft 2983
again. As returned, and aided by the legal presumption that it is
located as returned, we find it started for its western line at the
eastern line of Nichols & McPherson 3931 and 3932, and ran east
461 rods to a post on the northwestern corner of survey 2981. I
say that is what appears there; and I say to you now that then
2981 would apparently, according to the terms, begin at this
northwest corner and continue east 477 rods to the ironwood
as stated in the official drafts to be a corner of another Wilhelm
Willink survey No. 2955. [From this connected draft, we find
that the ironwood is marked as a corner for that which is a war-
rant to the east of this adjoining it on the west. Now, if such
was the location, part of 2981 would be on top of Pickering 122,
an older warrant; but we may safely say here in any event,
even accepting the theory of the defendants that the hemlock
was the northwest corner of 2981 instead of the ironwood, part
of this 2981 would be located, or is located, on this Pickering
warrant—overlaps it.] [6] But under the evidence, no differ-
ence what exploration surveyor Brady may have made when
locating 2983, his official return starts at the east line of Nich-
ols & McPherson 3931 and 3932. We say to you, we have
nothing to change this, although there may have been explora-
tions beyond and over that line, we find no evidence to submit
to you to change the commencement of 2983 from that which
appears to have been adopted on the returned survey, and the
western line of that survey is the eastern line of Nichols &
McPherson. Then that being the case, it would, upon its face,

naturally go east 461 rods to what is marked as a post, and then 2981 would commence there and continue 477 rods to the ironwood, as marked on the draft. Now the plaintiffs contend this is the proper location. Hence, the dispute. We meet right here, then, two important questions. Where was the actual northeast corner of 2981? When we find it, where from it was the division line between 2983 and 2981? If we cannot find the eastern line of 2981, can we still find whether the surveyor in 1794 made a division line between these two surveys 2983 and 2981? If so, where was it? The plaintiffs deny any such line or division, and rely primarily upon the surveys starting from the Nichols & McPherson line in the west; while the defendant denies the correctness of the official draft, denies that there was an ironwood at the northeast corner of 2981, but that the actual marked corner there was a hemlock. . . . To avoid confusion, if you are not satisfied that there was a division line made between 2983 and 2981 in 1794, but find that the hemlock was the actual corner, then I repeat, there was a proportional decrease of distance. If there was no division line, however, made between them, there would be a ratable decrease in the length of the respective lines in proportion to the length of the lines of the respective tracts between the points where it started and this hemlock at which it would stop; and upon a calculation we find that would leave about thirty-five acres and a half of the land in dispute on 2983; and if the plaintiff would be entitled to recover on that theory, he would only be entitled to recover for the timber that was cut upon that portion.

Now, gentlemen, take this case, and under our instructions see where was 2983 located. Was it located and given its whole distance? If so, the plaintiffs would be entitled to recover the whole claim. Was it so located that the eastern line stopped at the hemlock? Then there would be a proportional decrease. [If, however, there was a division line made between them in 1794 as contended for by the defendant, then of course your verdict should be for the defendant, because it would throw all the land on the defendant. You are to be controlled in this matter by the weight of the testimony.] [7]

Plaintiffs' fourth point and answer thereto were as follows :

That as there was a line run and well marked upon the ground in 1794, the date of the location of warrants Nos. 2983 and

2981, fifty rods east of the hemlock referred to in the third point, which eastern line is about nineteen rods short of the full distance called for by the lengths of north and south lines of tracts Nos. 2983 and 2981, which first named line extends the full distance southward from the north line of the last named tracts to the south side of three tiers of the Wilhelm Willink & Co. tracts, it is a pregnant circumstance to show that, after the discovery by the surveyor who laid the warrants he had overlapped the Nichols & McPherson warrants, abandoned the line forty-eight rods west of the eastern line of the Nichols & McPherson warrants and the corresponding north and south lines, and run the eastern line calling for the ironwood, as the east boundary of warrant No. 2981. *Answer :* The matters referred to are proper to be considered by the jury when seeking to discover from all the evidence what was the true location of the eastern line of 2981. While we will not say the matter referred to is a pregnant circumstance, still it is material matter, and should be considered by the jury in connection with the other evidence in the case. [1]

Defendant's second point and answer thereto were as follows :

That the provisions of the act of March 29, 1824, were intended only to prevent the wilful or careless cutting of another's timber. *Answer :* That is correct. [2]

Verdict and judgment for defendant. Plaintiffs appealed.

*Errors assigned* among others were (1–7) above instructions, quoting them.

*W. F. Stewart* and *G. A. Jenks,* for appellant.—In questions of private boundaries, declarations of particular facts, as distinguished from reputation, made by deceased persons, are not admissible unless they were made by persons who, it is shown, had knowledge of that whereof they spoke, and who were on the land or in possession of it when the declarations were made, and these declarations, to be evidence, must have been made while the declarant was pointing out or making the boundaries, or discharging some duties relating thereto : Hunnicutt v. Peyton, 102 U. S. 364 ; Bender v. Pitzer, 27 Pa. 333.

In Dawson v. Mills, 32 Pa. 302, the evidence was admitted because the witness at the time of the statement was in possession of the land, and showing the extent of his claim.

In case of Kennedy v. Lubold, 88 Pa. 246, the evidence was admitted, and the grounds stated by AGNEW, C. J., is: "Herrington in 1837, and Fenton in 1838, were engaged in professional acts, the latter locating the warrant officially, and under his oath of office.

"The declarations as to the corners when found, blocked and counted, were a part of the res gestæ, and so far from being doubtful evidence, were competent and always admitted when the transaction is old and surveyor dead."

*Cadmus Z. Gordon* and *Charles Corbet*, with them *C. Mitchell*, for appellee.

OPINION BY MR. JUSTICE DEAN, January 3, 1898:

This is an action of trespass by plaintiffs against defendant for cutting timber on a tract of about 50 acres of land in Jefferson county. Both parties claim title to the land on which the timber was cut; it was unimproved, and in the actual occupancy of neither up to the date of the alleged trespass.

On the application of William Willink and others known as the Holland Land Co. warrants for the survey of nine tracts were issued to them in 1792. These warrants were placed in the hands of William P. Brady, deputy surveyor, who on November 7 and 10, 1794, located the nine tracts in a block three surveys wide and three deep. In his return the three eastern and three middle tracts are plotted each as 477 rods long and 320 wide, and each containing 900 acres and allowance; the three western tracts, while of the same width as the others, yet as only 461 rods long, and each containing only 870 acres and allowance. The original corners of the block corresponding to the date of the survey were found upon the ground as late as 1863. In fact, there is no doubt as to the location of the block. Further, it was clear, that at the western, north and south line of the block the surveyor had overstepped the boundary of an older survey made the year before, in the name of Nichols & McPherson, and that after his field work was done he had discovered this fact; so, before making his return, he adopted on his plot the eastern boundary of the Nichols & McPherson as the western boundary of his block; as this shortened the lengths of his north and south block lines, he shortened the north and south

lines of the western tracts of the block, so that they appear on the return as but 461 rods long instead of 477, the plotted length of the other six tracts. The plot assumes, that the north and south line of the Nichols & McPherson survey had the same course as that of the block; but in this the surveyor was mistaken. Evidently, after discovering he was over on the Nichols & McPherson, he did not run the eastern line of that block on the ground, for it is a well marked line and, run by its course, cuts off about 48 rods of the northwestern tract and 27 rods of the southwestern tract of the block. As before noticed, there is no question as to the location of the block, but this contention arises from a dispute as to the location of the north and south interior line dividing the three western tracts from the three middle ones. Without noticing further the chain of title of plaintiffs and defendant respectively, it is sufficient to say, the true location of this interior line determined the title and right of possession in one or the other of these parties. The plaintiffs had title to survey made on warrant 2983, which was the northwest corner of the block; they claimed that the surveyor when he discovered that his location of the block overlapped the Nichols & McPherson survey, changed his return by moving this survey, 2983, and the next one to it, 2981, 50 rods further east; ran and marked an interior line 50 rods further east as the eastern boundary of the three middle warrants, and plotted a division line between the three western and three middle warrants, which division line throws the land in dispute to the west side of that line and within the boundaries of 2983, their survey. The defendant claimed that the surveyor, on discovering his mistake in running over on the Nichols & McPherson, merely shortened in his return the north and south line of the three western warrants of the block, leaving the interior lines stand as he had run them, and the quantities in the three middle and eastern surveys unchanged.

It was very clear that there was a well marked line, very old, fifty rods east of that apparently returned in the plot of Brady's survey, which line was claimed by plaintiff to have been run on the ground as the division line between the middle and eastern tracts, and that this line had been run by Brady after he had discovered that the location of the block overlapped the Nichols & McPherson. If this old line, had indisputably, counted to the

date of Brady's survey, 1794, plaintiffs' theory would have been established, and they would have been entitled to a verdict; but the evidence was conflicting; some of it was very significant, as tending to show that this line counted only to 1806, twelve years later than the Brady survey. It started from a corner on the south line of the block, and to that extent was connected with the original survey of the block, but the corner, instead of a hemlock as called for, was a beech, and the beech counted only to 1806; the line then extended north by a course parallel with the line claimed by defendant, but the evidence to show that it terminated at the northern line of the block was very vague. True, there was some evidence tending to show that the 1806 marks were but a remarking of an older line, but there was other evidence to contradict this.

The court below was of the opinion it was a question of fact as to the true location of the dividing line between the three western and the three middle surveys, and submitted the evidence bearing on that point to the jury, who found for defendant, and we have this appeal by plaintiffs. Eight errors are assigned, all except the last alleging errors in the charge to the jury. As already noticed, the contention arose because of dispute as to the location of the division line between the three western and middle warrants. The location of the north and south lines of the block was not disputed. There was evidence, that two lines had been run north and south parallel to each other, and about fifty rods apart; either of them, on competent evidence might have been found by the jury to be the original division line; if the one located nearest the east boundary of the block was the true one, then defendant had trespassed on plaintiffs' land; if the one nearest the western boundary was the true one, the land belonged to defendant. In submitting the conflicting evidence tending to establish one or other of these lines to the jury, we are unable to detect any substantial error in the instruction. Plaintiffs' first point asked the court to say that, as there was a well defined line fifty rods east of the line claimed by defendant, which extended from the north to the south boundary of the block, that was "a pregnant circumstance" to show that the surveyor after he discovered his mistake in overlapping the Nichols & McPherson survey abandoned the line claimed by defendant and located this new line and made

return thereof in his survey. The court, in effect, affirmed this point, by saying the evidence should be considered by the jury, but modified the language thus : " While we will not say the matter referred to is a pregnant circumstance, still it is a material matter." The exact difference in the significance of " a pregnant circumstance " and a " material matter," which the learned judge of the court below saw when he gave a modified answer to the point, and which counsel for appellants now see when they assign the answer for error, is not very clear to us ; we think it entirely probable the distinction was not quite clear to the jury, and that, in consequence, they gave to the circumstance, whether a " pregnant one " or a " material matter," all the weight it was entitled to ; for that reason the assignment is not sustained.

The second assignment of error to the interpretation put by the court on the act of March 29, 1824, is not sustained. The act was intended only to prevent the wilful or careless cutting of another's timber: Kramer v. Goodlander, 98 Pa. 353. The third, fourth, fifth, sixth and seventh assignments complain of the reference made by the judge in his charge to the Timothy Pickering warrant. It appears, that some ten years before the date of these surveys a warrant had been laid on part of the same land in name of Timothy Pickering; it seems to have extended over parts of three of the eastern and middle tracts. Whether actual surveys had been made on it, or whether any survey had been returned into the land office, did not appear. One thing did clearly appear, the deputy surveyor, Brady, who located this block, was ignorant of the existence of any such survey, and nowhere notes it in his return; nor does he recognize in any manner a single mark upon its lines. Obviously, he ran the lines of his block wholly regardless of it. Neither party claimed an inch of land under it or professed to locate his land by it. Why the learned judge of the court below referred to it at all in his charge, we cannot discover; it was lugged in, only to be thrown out again as of no consequence. While we cannot discover any reason for reference to it, neither can we discover that reference to it did plaintiffs any harm. After the appearance of this ghost, the jury was informed of its harmless character, and their attention directed to the evidence bearing on the true location of the division line ; the testimony on each

side tending to establish the one line or the other by marks and monuments on the ground was pointedly called to the notice of the jury, without allusion to the Timothy Pickering as a material fact. If we could discover that the attention of the jury had been diverted in any degree from the real point in dispute by this wholly irrelevant subject, we would pronounce this part of the charge error ; but as we are of the opinion it could not have had the slightest weight in shaping the verdict, these assignments are overruled.

The objection to the deposition of Henry Keys is not noticed, because appellants have neglected to print it as part of the evidence. If evidence be objectionable, and counsel expect us to so decide, the least they can do is to conform to the rule of court which requires the printing of the testimony.

The judgment is affirmed.