# The Mineral Railroad and Mining Company, Appellant, *v.* Wesley Auten.

*Land law—Ancient document—Evidence.*

A draft of a survey over one hundred years old found in the county commissioners' office, among the deputy surveyor's papers, in the place where the office of the deputy surveyor was kept, and where the official papers belonging to his office were deposited, proved to be in the handwriting of the person who was deputy surveyor at the date appearing on the face of the paper, is evidence to elucidate and ascertain a boundary.

*Land law—Location—Survey—Return of survey.*

While it is a settled rule of law governing the location of surveys that the lines run and marked upon the ground by the deputy surveyor constitute the actual survey, and where these can be found the survey must be

located by these lines, the rule does not apply where the deputy surveyor, after making the survey, finds that he has included a larger portion of land than the act of April 1, 1784, allows, and in making his official return cuts off a strip of the land. In such a case the deputy surveyor has not only a right, but it is his duty, to change the survey prior to his return.

While a warrant is in the hands of a deputy surveyor, before he makes a return of the survey, he may alter his original survey, throw out, or take in other lands, provided it does not interfere with mesne rights between the time of the original survey and the alteration, before the return. But when the survey is returned the authority of the deputy surveyor is exhausted, and it requires a new authority from the surveyor general or the board of property to warrant such alteration.

A warrant was placed in the hands of a deputy surveyor of Northumberland county, who, on September 2 and 3, made a survey by running the lines upon the ground and marking the corners. Before making his return he cut off a strip of twenty rods from the northern part of the east and the west lines of the survey, abandoned the northern line as originally run and marked upon the ground, and returned the northern line with post corners, upon which return of survey, a patent was issued. *Held,* that the survey as returned concluded the owner of the warrant and those claiming under him.

*Land law—Return of survey—Mistake—Board of property.*

A warrantee of land will be concluded by the return of the deputy surveyor, unless he make application to the board of property to correct an alleged mistake.

*Land law—Patent—Survey.*

The acceptance of a patent for land defines the lines and the quantity of the survey, and the patentee and those claiming under him are concluded by it.

*Practice—Request for charge—Assignments of error.*

Error cannot be assigned to the omission of a judge to charge in a particular way unless his attention was called to it by a special request.

*Land law—Location—Variance between return and marks upon the ground.*

Where a deputy surveyor in his official return makes the distance between two well marked corners of the survey twenty rods less than the actual distance on the ground, the difference in distance cannot be added to a line of the survey running south from one of these marked corners to a post corner, as it would contradict the official return and interfere with another survey on the south.

Argued May 23, 1898. Appeal, No. 553, Jan. T., 1896, by plaintiff, from judgment of C. P. Northumberland Co., May T., 1886, No. 161, on verdict for plaintiff. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Ejectment for a tract of land in Mt. Carmel township. Before MAYER, P. J., of the 25th judicial district, specially presiding.

The land in dispute is indicated by the heavy lines in the following plan:

At the trial the court under objection and exception admitted in evidence the following plan: [1]

The court charged in part as follows:

[Here is the William Lane, running along this line until you come to this maple corner.  At that point the Jesse Evans calls to run south ninety-seven rods, according to the official; it is called for as a post.  There is no monument found on the ground corresponding with the official on the ground, but it calls for a post, and it is not supposed that a corner could be found there, and running from the Gilbert west.  Then running south along this eastern line of the Jesse Evans, you come to the end of the official distance, eighty-six rods, and

we instruct you that the proper way to locate the southern line of the Evans is to commence at this well-known corner of the William Lane, run this line according to its official distance until you come to the maple corner of the Jesse Evans, then south ninety-seven rods, and then commence at the William Gilbert pine and run west until you come to the northeast corner of the Evans, then south eighty-six rods, and a line running from ninety-seven rods to the eighty-six rods to the end of the southern line of the Jesse Evans.] [2]

[All surveyors concur in testifying that this pine stump, as it is called, is a well-known corner of the Andrew Shuber, and the Andrew Shuber can and must be located from that pine corner, as it is called for and was made by the surveyor who located that in 1784, and being a monument on the ground, well known and not disputed, the Andrew Shuber can and must be located from that corner; and running from the southern line of the Shuber north the official distance, it calls for a post 230 rods. In running the eastern line of the Shuber it calls for 300 rods as the eastern line of the Shuber, and we instruct you that the proper location of this northern line would be to run out this official distance from the pine stump 300 rods; that would give the northeast corner of the Shuber, and running the southern line from this stump would fix the northwest corner of the Shuber, and a line running at the end of 300 rods to intersect at the end of 230 rods would give the proper location of the northern line of the Shuber.] [3]

Plaintiff's points and the answers thereto among others were as follows:

1. A deputy surveyor, after marking the lines of his survey upon the ground in execution of a warrant, cannot by a chamber line strike off a portion of the land embraced within the marked lines upon the ground without the consent of the owner of the warrant. *Answer:* Refused. [7]

2. A deputy surveyor cannot, after he has marked the lines upon the ground in making his survey under a warrant, alter any lines which he has already made on the ground so as to affect by diminishing the quantity already covered by the actual lines on the ground, unless he goes upon the ground and runs and marks the new excluding lines upon the ground before he returns the survey into the land office. *Answer:* Refused. [8]

3. Unless the deputy surveyor, when he wishes to exclude from the survey already run and marked by him on the ground a part of the land so included, goes upon the ground and runs and marks the new excluding lines so that the owner of the survey and warrant may be able to discover that the official survey to be returned will contain less land than the original survey so previously made, he cannot be affected by the return so made for less land, and the owner may hold to the lines originally marked upon the ground. *Answer:* Refused. [9]

4. If the jury find from the evidence that the lines found by the plaintiff's witnesses (surveyors) to have been made by the deputy surveyor, William Gray, in 1784, and that he ran no other line as the north line of the Andrew Shuber, then no subsequent purchaser of a warrant for the same land is an innocent purchaser, nor invested with such an intervening right as entitles him to hold the land, because the line so marked upon the land was notice to him that the Andrew Shuber ran as far north as made it include the land surveyed to Auten, the defendant, on his warrant and survey in 1885. *Answer:* Refused. [10]

5. If the jury believe that the north line of the Shuber, as claimed by the plaintiff's surveyors and marked on the ground, is in fact the second line run by William Gray, the deputy surveyor in 1784, after he had cut off a portion of the land embraced in the original or first survey, then the land covered by the said north line belongs to the plaintiffs, although the line has to be run 320 or 321 perches instead of 300 perches to reach said line; the distance over 300 perches to reach said line is not material, as the line must be extended until it reaches the gum witness. *Answer:* Refused. [11]

6. The paper purporting to come from the land office of Northumberland county, in which are lines corresponding in some particulars with the survey on the Andrew Shuber, cannot in any way control the monuments on the ground. If said paper was made by William Gray, deputy surveyor, it cannot in any manner affect the rights of the owners of the Andrew Shuber, it not being notice to any one, nor restrictive of the plaintiff's rights as owner of the Shuber tract. *Answer:* Refused. [12]

7. The old paper aforesaid could not after a lapse of 108 years be used to limit the marks found on the ground on the Shuber survey. *Answer:* Refused. [13]

8. It is in proof that there is frequently an excess in the lengths. of the lines run 100 years ago, and such excess does not stand in the way of extending the east and west lines of the Shuber twenty perches beyond its calls. *Answer:* Refused. [14]

The court instructed the jury to find in favor of the plaintiff for that portion of the land embraced in the writ of ejectment, being part of the Wesley Auten survey, as per draft attached and made part of the record: No. 1. Beginning at a post 230 rods north of the southwest corner of the Andrew Shuber tract; thence north 76 degrees 43 minutes east 104.2 rods to a post; thence south 7 degrees 29 minutes east 8 rods to a post; thence south 76 degrees 27 minutes west 104.2 rods to post; thence north 8 degrees 22 minutes west 8 rods to a post, the place of beginning: containing $4\frac{1}{2}$ acres and allowance, more or less; No. 2. Beginning at a post at the intersection of the Jesse Evans south line and the northwest line of the Wesley Auten survey north 80 degrees 8 minutes east 115 rods to a post; thence north 7 degrees 29 minutes west 14.25 rods to post; thence south 83 degrees 15 minutes west 103.85 rods to a post; thence south $22\frac{1}{2}$ degrees west 24 rods to post, the place of beginning: containing 11 acres 37 perches and allowances, more or less; No. 3. Beginning at a post; thence north 69 degrees east 19 rods to a post; thence north 8 degrees 22 minutes west 5.1 rods to a post; thence south 68 degrees 15 minutes west 17 rods to a post; thence south $22\frac{1}{2}$ degrees west 6 rods to a post, the place of beginning: containing 85 perches and allowance, more or less; and No. 4. Beginning at a post 230 rods north of the southwest corner of the Andrew Shuber tract north 76 degrees 43 minutes east 104.2 rods to a post; thence north 7 degrees 29 minutes west 13.5 rods to a post; thence south 80 degrees 8 minutes west 115 rods to a post; thence south $22\frac{1}{2}$ degrees west 7.75 rods to a post; thence north 68 degrees 15 minutes east 17 rods to a post; thence south 8 degrees 22 minutes east 16.8 rods to post, the place of beginning: containing 10 acres and 85 perches and allowance, more or less. [15]

The verdict was in accordance with the instructions of the court.

*Errors assigned* were (1) ruling on evidence, quoting the bill of exceptions; (2, 3, 7–15) above instructions, quoting them.

*Joseph C. Bucher* and *Wm. H. M. Oram*, with them *B. F. Junkin*, for appellant.—The draft made in 1784 should not have been admitted in evidence: Sweigart v. Richards, 8 Pa. 436; Farley v. Lenox, 8 S. & R. 396; Baker v. Haines, 6 Whart. 284; Depue v. Place, 7 Pa. 428; Travis v. Brown, 43 Pa. 9; Haycock v. Greup, 57 Pa. 438; Clayton v. Seibert, 3 Brewster, 176; Aumick v. Mitchell, 82 Pa. 211; Foster v. Collner, 107 Pa. 305.

The rule that the lines of a survey as returned into the land office must, after a lapse of twenty-one years, be considered as true lines and boundaries of the land, has no application where the lines are marked upon the ground: Bellas v. Cleaver, 40 Pa. 260; Malone v. Sallada, 48 Pa. 419; Watson v. Jones, 85 Pa. 117; Thompson v. McFarland, 6 Pa. 478; Blasdell v. Bissell, 6 Pa. 258; Hall v. Powel, 4 S. & R. 456; Quinn v. Heart, 43 Pa. 337.

There is abundance of authority to show that the deputy surveyor could not, after making the survey for Andrew Shuber, and marking the line on the ground, throw out any portion of the land included in the survey, without the consent of the warrantee, which cannot be presumed, even though his patent showed that the survey as returned differed from the survey run and marked upon the ground: Norris v. Hamilton, 7 Watts, 91; Merchant v. Millison, 3 Yeates, 73; Adams v. Jackson, 4 W. & S. 79; Caufman v. Pres. Congregation of Cedar Springs, 6 Binney, 59; Caldwell v. Holler, 40 Pa. 160; Ruggles v. Gaily, 2 Rawle, 232; Adams v. Jackson, 4 W. & S. 55; Humphrey v. Cooper, 133 Pa. 432.

It should have been submitted to the jury to say whether the marked line found on the ground of the Shuber survey was not, in fact, the very exscinding line by which the deputy surveyor cut off the surplus, because it was his legal duty to go back upon the ground, run and mark the exscinding line so that no one should be afterwards misled by the monuments on the ground. The presumption is that he did his duty, and the line we find marked on the ground was in fact the exscinding line: Quin v. Brady, 8 W. & S. 139; Caul v. Spring, 2 Watts, 390.

There was no difficulty in locating the Jesse Evans by well known and admitted marks upon its own lines, or recognized

monuments on the exterior lines of the block. Its position in the block is certain, fastened by marks upon the ground common to both the survey and the block. By extending the east lines by their official courses and distances from the well established extreme northeast corner, as the deputy surveyor did on paper and returned, the location of this survey on the ground is not ambiguous, but is shown on the ground where successive generations of owners have claimed it to be by their deeds of conveyance for more than a century: Ferguson v. Bloom, 144 Pa. 549; Morrison v. Seaman, 183 Pa. 74; Northumberland Coal Co. v. Clement, 95 Pa. 126; Layton v. Paull, 5 Watts, 465; Boynton v. Urian, 55 Pa. 142; Darrah v. Bryant, 56 Pa. 69; Fox v. Lyon, 33 Pa. 474; Mathers v. Hegarty, 37 Pa. 64; Bushey v. Iron Co., 136 Pa. 541; Grier v. Penna. Canal Co., 128 Pa. 79; Hagerty v. Mathers, 31 Pa. 348; Beck v. Zimmerman, 87 Pa. 313.

Original marks or monuments on the ground are the highest evidence of the location of a survey: Cross v. Tyrone Mining & Mfg. Co., 121 Pa. 387; Parks v. Boynton, 98 Pa. 370; Wharton v. Garvin, 34 Pa. 340.

A well located older warrant is a sure means of locating a younger which calls for the older: Eister v. Paul, 54 Pa. 196; Stroup v. McCloskey, 1 Pa. Sup. Ct. Dig. 130; McGinnis v. Porter, 20 Pa. 80.

*S. P. Wolverton,* for appellee.—The right of the deputy surveyor to alter his survey prior to his return is well established: Healy v. Moul, 5 S. & R. 181; Vickroy v. Skelley, 14 S. & R. 372; Steel v. Finley, 3 Yeates, 169; Hepburn v. Levy, 4 Dall. 218; Kyle v. White, 1 Binn. 246; Drinker v. Holliday, 2 Yeates, 88; Hughes v. Stevens, 43 Pa. 197; Acre & Weiss v. Gilbert, 3 P. & W. 299; Maris v. Hanna, 4 W. & S. 348; Huston on Land Titles in Penna., page 451; Jones on Land Office Titles, page 53.

The acceptance of a patent defines how much land the tract is to contain when it is located, and the patentee is bound thereby: Raush v. Miller, 24 Pa. 281; Balliot v. Bauman, 5 W. & S. 150; Smith v. Vasbinder, 77 Pa. 127; Fritz v. Brandon, 78 Pa. 342; Davis v. Butterbach, 2 Yeates, 211; Grier v. Coal Co., 128 Pa. 79.

On a question of boundary, quantity has great weight in determining which of two locations is the correct one : Kennedy v. Lubold, 88 Pa. 246.

The appellant's location of the southern line of the Evans is erroneous. It distorts the survey as returned, cuts from the Taylor a large amount of its area and adds largely to the Evans, whereas both the Evans and the Taylor are fixed on the ground by their own monuments and by the monuments of all their adjoiners, and it is in violation of all the principles of location of surveys or members of block of survey: Bloom v. Ferguson, 128 Pa. 362; Pruner v. Brisbin, 98 Pa. 202; Sugar Valley Lumbering Co. v. Barber, 87 Pa. 313.

The appellant's counsel in the first specification of error complain that the court erred in admitting the old draft of Andrew Shuber, produced from the office of the deputy surveyor of Northumberland county. This draft was found among papers of the deputy surveyor's office in a cupboard in the commissioner's office, where the papers of this office had been kept, and shows upon its face its genuineness : Sweigart v. Richards, 8 Pa. 436 ; Hoover v. Gonzalus, 11 S. & R. 314 ; Boyles v. Johnston, 6 Binney, 126 ; McCormick v. McMurtrie, 4 Watts, 192 ; Norris v. Monen, 3 Watts, 465 ; McCausland v. Fleming, 63 Pa. 38.

Maps, ancient surveys, as well as reputation, are evidence to elucidate and ascertain a boundary : Clement v. Packer, 125 U. S. 309 ; Penny Pot Landing of Philadelphia, 16 Pa. 79.

OPINION BY MR. JUSTICE GREEN, October 17, 1898:

The Mineral Railroad and Mining Company, plaintiff in the court below and appellant, was the owner of four tracts of land situate in Mount Carmel township, Northumberland county, in the warrantee names of George Sheets, Andrew Shuber, George Coldrain and Jesse Evans. Three of these tracts, the Sheets, Shuber and Coldrain, were surveyed by William Gray, then deputy surveyor of Northumberland county, on September 2 and 3, 1784, in pursuance of warrants dated July 1, 1784, and constitute a block of surveys which is known as the "Ball Block." The Evans tract was surveyed on October 17, 1793, in pursuance of a warrant dated May 10, 1793, and is a member of a block of surveys containing twenty-five tracts, and known as

the " Nicholson Block." Wesley Auten, the defendant in the court below, was in possession of a tract of land of twenty-six acres and twenty-two perches, which was surveyed on December 8, 1885, in. pursuance of a warrant dated September 18, 1885. The Auten survey called for and adjoins on the north the Jesse Evans tract of the Nicholson block, and the Andrew Shuber tract of the Ball block on the south.

The contention in this case was whether there was any vacant land between the Andrew Shuber tract of the Ball block and the Jesse Evans tract of the Nicholson block, which could be appropriated to the Auten survey or any portion of it, or whether the Ball and Nicholson blocks covered the land in controversy so as to leave no vacancy for the Auten survey. The Ball and Nicholson blocks being senior surveys are entitled to priority and must be first located.

The case was tried before the learned judge of the twenty-fifth judicial district, specially presiding, who, after the evidence was closed, there being no dispute as to the facts, being of opinion there was some vacant land between the two blocks of surveys directed a verdict for the defendant, Auten, for ten acres and eighty-five perches, upon which judgment was entered and from which the plaintiff took this appeal.

The plaintiff has assigned fifteen errors to the action of the court. The first specification of error relates to the admission in evidence of the draft found in the county commissioners' office of Northumberland county among the deputy surveyor's papers, purporting to have been made by William Gray, then deputy surveyor, and in his handwriting. This draft or survey was found in the place where the papers of the deputy surveyor of the county were kept, was a survey of the Andrew Shuber tract, made by William Gray, deputy surveyor, and sufficiently identified by the testimony of the grandson of William Gray, who testified that the paper was in the handwriting of his grandfather, William Gray, as he had handled a great many of his official papers after he became old enough to read, and was informed by his father and grandmother that these official papers were in his grandfather's handwriting. Besides, the paper was found in the place where the office of the deputy surveyor of the county was kept, and where official papers belonging to the office were deposited. Being an ancient survey

it would be evidence of itself to elucidate and ascertain a boundary: Commonwealth ex rel. North Liberties v. City of Philadelphia, 16 Pa. 79. In Sweigart v. Richards, 8 Pa. 436, this Court said: " The title to land cannot be acquired or established by unofficial diagrams, drafts or surveys. But such papers may often be extremely useful in fixing and designating doubtful boundaries. It has been an ancient custom of the courts to receive them in evidence for what they are worth, in illustrating a question of boundary. Thus in the case of McCormick v. McMurtrie, 4 Watts, 192, it was ruled that the field notes and other official proceedings of a deputy surveyor may always be given in evidence to explain his acts; and in the case of Nieman v. Ward, 1 W. & S. 82, it was ruled that reputation and hearsay is such evidence as is entitled to respect in a question of boundary, where the lapse of time is so great as to render it difficult to prove the original landmarks. In Payne v. Craft, 7 W. & S. 458, it was decided that the field notes of a deputy surveyor were competent as evidence of boundary, and also that a connected draft certified from the land office was competent evidence for the same purpose. A connected draft from the land office, is usually the work of a clerk and derives all its value from the juxtaposition of the different surveys. But the same work done by the original surveyor, if genuine, would seem to be a surer and more perfect guide as to boundary. Were, then, these field notes and this connected draft the veritable work of Bertram Galbraith, the deputy who made the surveys, and returned the survey under which the plaintiff claims? The papers have been produced here in court and wear on their face the strongest appearance of authenticity and antiquity. They are covered with the rust of time, and are written in the strong legible chirography which distinguished public surveyors and other public officers seventy years ago." The authenticity of this paper is strengthened by the fact that it corresponds precisely with the official return of the Andrew Shuber survey and the description contained in the patent. The court was clearly right in admitting this paper or survey in evidence.

The third, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth and fifteenth specifications of error relate to the action of the court in refusing the eight

points presented by plaintiff, and directing a verdict for the defendant for ten acres and eighty-five perches. The eight points of the plaintiff request the instructions of the court upon the location of the Andrew Shuber survey and were refused. In this there was no error.

The official return of the Andrew Shuber survey calls for a pine at its southeast corner, a maple at the stream in the angle of its southern line, a post at its southwest corner and a post at its northwest and northeast corners. This official return corresponds with the draft of William Gray which was offered in evidence.

From an examination of the testimony of the surveyors called by both plaintiff and defendant, it does not appear that there was any dispute about the southern line of the Shuber survey. It was well located by its own marks found on the ground by the surveyors. The entire controversy grew out of the location of the northern line of this survey. The court instructed the jury: " The Andrew Shuber was surveyed on the second day of September, 1784, and is older than the Jesse Evans, and if there should be any conflict between the Jesse Evans and the Shuber, the Shuber would take precedence, having been first located on the ground. All surveyors concur in testifying that the pine stump, as it is called, is a well known corner of the Andrew Shuber, and the Andrew Shuber can and must be located from that pine corner, as it is called for and was made by the surveyor who located it in 1784, and being a monument on the ground, well known and not disputed, the Andrew Shuber can and must be located from that corner; and running from the southern line of the Shuber north the official distance it calls for a post at 230 rods. In running the eastern line of the Shuber it calls for 300 rods as the eastern line of the Shuber, and we instruct you that the proper location of this northern line would be to run out this official distance from the pine stump 300 rods; that would give the northeastern corner of the Shuber; and running the southern line from this stump would fix the northwest corner of the Shuber, and a line running at the end of 300 rods to intersect at the end of 230 rods would give the proper location of the northern line of the Shuber. That would leave, according to the testimony of the witnesses, about ten acres and some perches of the Wesley

Auten warrant and survey not interfered with, and in my judg-ment it is the proper location of the Jesse Evans and Andrew Shuber tracts and also of the Wesley Auten tract, and we so instruct you."

This location accords exactly with the return made by Wil-liam Gray, the deputy surveyor, to the land office, and on which a patent was issued to William Ball, containing a description which follows exactly the courses and distances of this official survey. But the plaintiff contends that the north line of the Shuber survey was marked upon the ground by the deputy surveyor in 1784; that the living monuments which marked its location still exist on the ground; that the east and west lines of the Shuber should be carried north until they reached this marked line, the east line to the corner, which the surveyors testify was witnessed by a gum, and the west line to the cor-ner witnessed by a chestnut oak.

It is a well-settled rule of law governing the location of sur-veys that the lines run and marked upon the ground by the deputy surveyor constitute the actual survey, and where these can be found the survey must be located to these lines. But the difficulty in the application of this rule in the present case is that the deputy surveyor when he came to make his official return cut off a strip twenty rods wide from the northern part of the east line and west line of his survey, and abandoned his northern line as originally run and marked upon the ground. The deputy surveyor had evidently discovered that the east and the west lines of the survey had been run too far north, which would have included a larger quantity of land in the survey than the act of April 1, 1784, allowed, viz: 400 acres and allowance. It appears on this old draft or survey that the length of the eastern line of the survey as originally run was 321.94 rods, and of the western line was 258.3 rods. By cut-ting off the strip of twenty rods, the length of the eastern line was reduced to 300 perches and the western line to 230 perches. Post corners were marked on this draft at the northeast and northwest corners, a line protracted from post corner to post corner, and the quantity of land reduced from $471\frac{3}{4}$ acres to 440 acres. The survey thus changed and altered by the deputy surveyor was returned, and accepted by the land office, and a patent issued to William Ball in accordance with this official

return. That the deputy surveyor had a right to alter his survey prior to his return cannot be questioned. This principle is firmly established by the authorities. In fact it was the duty of the surveyor to alter his return after he discovered· that he had included in his survey an excess of quantity, so as to conform to the requirements of the act of April 1, 1784. This principle was decided in Healy v. Moul, 5 S. & R. 181.· "The first presumption is that every survey is made with the consent of the owner, if it is returned. That presumption is corroborated, if it is patented. It would require evidence of fraud and imposition by the surveyor, or by the adverse claimant, to let the owner take lands that had been appropriated to others. It would be opening a wide door if at the end of thirty years, evidence were to be received, that all this was done in mistake, and land opened to a new survey, where it had been appropriated by grant and patent, for all that time. The laches and negligence of the party, when the act was his own, or adopted by him, could never be relieved against in a court of equity. I do not question the right of an owner to have his lines extended if his warrant.is not filled; nor do I doubt of the right of the deputy to alter his original survey, to throw out, or take in other lands; provided this is done recently and does not interfere with mesne rights, between the time of the original survey and the alteration, before the return. But when the survey is returned, the deputy is functus officio, and it requires a new authority from the surveyor general, or the board of property to warrant such alteration: 2 Sm. Laws, 255. What miserable confusion would ensue, if every deputy, after his survey returned was at liberty to change the position of an actual survey, actually returned, and disturb intermediate grants. It is the duty of the owner, to show the lands intended by his warrant to the surveyor; and the presumption of the law is, that he has shown this, and that the survey has been made by his consent; and if a survey is made with which he is dissatisfied, he should, without delay, complain to the surveyor general or board of property, and pray for redress; otherwise the survey will conclude him: 2 Sm. Laws, 256; Hunter's Lessee v. Meason, 4 Yeates, 107." The same principle will be found in the following cases: Vickroy v. Skelley, 14 S. & R. 372; Adams v. Jackson, 4 W. & S. 55; Drinker v. Holliday, 2 Yeates, 87; Hughes v. Stevens, 43 Pa. 197.

In Acre & Weiss v. Gilbert, 3 P. & W. 299, Justice HUSTON in delivering the opinion of the court, said, page 312 : "It was a practice sanctioned by many decisions that when a survey was completed, as far as running and marking the lines and making the calculation, and it was then discovered that land enough had not been included, the deputy surveyor included more land by protraction on paper so as to fill the warrant, and returned the draft as protracted to the surveyor general's office, and if the land taken in by protraction was unappropriated before, the party had title according to the draft returned, but it is the return which in such cases gives title."

In Maris v. Hanna, 4 W. & S. 348, this Court said : "In making the official survey intended to adjoin an old survey, if by mistake it does not adjoin, the error may be corrected at any time before the survey be returned; and the settler or warrantee making the survey and marking the line, if he find he has not a sufficient quantity, may abandon that line and take more at any time before another person acquires a right to the adjoining land."  In the recent case of Humphrey v. Cooper, 183 Pa. 432, the right of the deputy surveyor to change his survey before he returned it into the land office, is affirmed in the opinion delivered by Mr. Justice DEAN.

If, as claimed by plaintiff, a mistake was made by the deputy surveyor in his return of the Shuber survey, it was the duty of the owner of the warrant to have made application to the board of property for redress, otherwise the survey will conclude him : Healy v. Moul, supra.  His acceptance of the patent defines the lines and quantity of the survey, and the patentee and those claiming under him are concluded by it.  This Court has said that "the acceptance of a patent ends all controversy about lines and quantities other than those described in it : " Bellas v. Cleaver, 40 Pa. 260.  "On general principles, a party is concluded by the lines of his patent : " Lessee of David Davis et al. v. George Butterbach et al., 2 Yeates, 211.  To establish the rule that the owner of a warrant can, after his survey has been returned and patent issued, enlarge and extend the lines of his survey, would produce the results stated by Justice THOMPSON in Bellas v. Cleaver, supra : "It would have the effect to change and enlarge surveys even after, as in his case, a patent had issued.  It would introduce lines neither returned

by the deputy surveyor nor to be found in the patent. It would pass lands not sold by the commonwealth, and without her consent, and without paying to her the purchase money. It would ignore the orderly mode of changing a boundary by an order of resurvey, a consequence of which is payment for any increase of land, and an official return of the new survey." In Raush v. Miller, 24 Pa. 277, we held that "to allow a warrantee, who has neglected or refused to return the excess of his warrant and pay for the land, to stand on a better footing than a new warrantee who has procured his survey and patent, and paid the commonwealth, would be to encourage not only negligence, but would be offering a premium for a palpable fraud upon the public revenue."

The learned judge held the law correctly in his location of the Shuber tract and in his answers to plaintiff's points.

The second, fifth, fourteenth and fifteenth specifications of error complain of the action of the court in regard to the location of the Jesse Evans, George Coldrain and Isaac Taylor tracts of land. The court was not requested by the plaintiff to instruct the jury in regard to the location of either of these tracts, and its omission to do so cannot now be assigned for error. "Error cannot be assigned for the omission of a judge to charge in a particular way unless his attention was called to it by a special request:" Fox v. Fox, 96 Pa. 60. And in Phila. & Read. R. R. Co. v. Getz. 113 Pa. 214, it was held "In a civil case, when no request is made, the mere omission to charge upon a particular point, is not ground of error."

These assignments would be dismissed without further notice, but as the location of the Jesse Evans tract might be involved in further litigation we have concluded to pass upon the error assigned to the instructions of the court in regard to the location of this tract. The northern line of the Evans is not disputed. The error complained of is the method adopted by the court in locating its southern line. The court instructed the jury that the proper mode of locating the southern line of the Jesse Evans tract was to commence at the southwest corner of the William Lane, a well known corner, and run east the various courses and distances till you come to the angle in the Jesse Evans, which has been spoken of as a maple corner by a number of witnesses; then south ninety-seven rods the official dis-

tance of the Evans; then commence at the William Gilbert pine corner and run west until you come to the northwest corner of the Evans; then south eighty-six rods, and a line running from the end of the ninety-seven rods to the end of the eighty-six rods would make the southern line of the Jesse Evans.

The Jesse Evans tract is a member of the Nicholson block of surveys consisting of twenty-five tracts. The survey as returned calls to adjoin the Jesse Brooks on the north and east and the Isaac Taylor on the south. The William Lane is the leading warrant of this block, and calls in its return of survey for a chestnut oak as its southwestern corner. This corner is an established and undisputed corner in the block. William Gilbert, another of this block, calls in its return of survey for a pine at its northwestern corner. This pine is a well established and admitted corner in the block, and is resorted to by all the surveyors in determining the location of the Nicholson block. The Jesse Brooks calls in its return of survey for a pine at its southeastern corner, which would be the pine at the southwestern corner of the Gilbert, the pine being a common corner of the Brooks and Gilbert surveys. The learned judge in his method of locating the southern line of the Jesse Evans began at the southwest corner of the William Lane and ran east along the southern line of the Mary Lane, Sarah Lane and the westerly south line of the Jesse Evans until he came to the angle in the Evans, the maple corner. From this corner he ran south ninety-seven rods, which would be the official distance, and established the southwest corner of the Evans. This part of the court's location of the Evans is not controverted by the plaintiff in his argument, but conceded to be correct. The contention was made, and is, as to the location of the easterly south line and the southeasterly line of the tract. The court determined the location of these two lines by starting at the pine, the undisputed southwest corner of the William Gilbert survey, thence west to the northeast corner of the Jesse Evans, thence south eighty-six rods to the post corner of the Evans, and ran a line, at the end of this official distance of eighty-six rods, west to the intersection of the line running south ninety-six rods from the maple. This in the opinion of the court properly located these two lines of the Evans, and would correspond with the official return of the Evans.

The contention of the plaintiff is that a mistake of twenty rods in distance was made by the surveyor in running from the northeast corner of the Evans, the pine, to the pine, the northeast corner in the angle of the Evans. The deputy surveyor in his official return makes the distance 169 rods, while the actual distance between the two pine corners on the ground is but 149 rods. The plaintiff now seeks to add twenty rods of shortened distance between the pine corners to the line running south eighty-six rods from the pine the southeast corner of the Evans in the angle, making the distance between this pine and the post corner 106 rods instead of eighty-six rods the official distance. We are clearly of opinion that this method of locating cannot be adopted. The pine corner in the angle of the Evans fixes the length of that line at 149 rods, and if a mistake of twenty rods was made in the distance, it cannot be corrected by adding twenty rods to the line running south eighty-six rods from the pine corner. To do this would contradict the official return and add considerable acreage to the Evans tract, and interfere with the location and acreage of the Isaac Taylor tract. We discover no error in the method adopted by the court in the location of the tracts in controversy in this suit, and its direction to the jury to render a verdict for the defendant Auten for the ten acres and eighty-five perches was in accord with the well-settled rules governing the location of surveys.

Judgment affirmed.